Pinney v. Sulzen.

No. 18,890.

*In re* PERRY F. PINNEY, *Petitioner,* v. THEODORE SULZEN, *Respondent.*

No. 19,000.

*In re* PERRY F. PINNEY, *Appellant,* v. THEODORE SULZEN, *Appellee.*

SYLLABUS BY THE COURT.

1. DIVORCE—*Custody of Minor Child Awarded to Wife—Death of Wife—Father Entitled to Custody of Child.* Where a husband and wife having children are divorced and the court in

its decree awards the custody of a child to each of them, and the mother dies while the child awarded to her is in infancy, the father then becomes entitled to the custody of that child, and this right continues in him unless it appears that he is an·unfit person to have the control and care of his child.

2. SAME—*Welfare of Child Considered—Unfitness of Father Must be Proven.*  In determining to whom the custody of a child should be awarded its welfare is to be regarded more than the technical legal right of the parent, but where an application made by a father for the custody of his child after the death of its mother is resisted by a third party on the ground that the father is immoral and unfit to have its custody he will not be deprived of such custody unless the objection is sustained by clear and satisfactory proof.

3. SAME.  Courts will not disturb the family relation nor take a child from its parent merely because a third person seeking its custody may have larger means and is therefore able to give the child greater comforts, wider education and the promise of a larger inheritance.

4. SAME.  In the present case it is held that the testimony does not establish that the father is unfit to be entrusted with the custody and guardianship of his child.

No. 18,890.   Original proceeding in habeas corpus. Opinion filed January 10, 1914.   Writ allowed.

No. 19,000.   Appeal from Douglas district court; CHARLES A. SMART, judge.   Opinion filed January 10, 1914.   Reversed.

*Joseph G. Waters, John C. Waters, Lee Monroe, James A. McClure, C. M. Monroe,* all of Topeka, *J. S. Amick,* of Lawrence, and *W. S. Roark,* of Junction City, for the petitioner and appellant.

*Robert Stone, George T. McDermott,* both of Topeka, and *James H. Mitchell,* of Lawrence, for the respondent and appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In proceedings in habeas corpus Perry F. Pinney seeks to obtain the custody of his daughter, Helen, who is about seven years of age.  He

and the mother of Helen were married in Omaha, Neb., in April, 1900. Two children were born to them, Harvey on March 23, 1902, and Helen on September 24, 1906. There was discord in the family relations and a separation occurred shortly after the birth of Helen. In 1908 the petitioner began an action in a court in Iowa to obtain a divorce from his wife, and in November of that year a judgment of divorce was entered but it was granted because of the fault of the petitioner. In the decree it was provided that the petitioner should have the custody of Harvey while the custody of Helen was given to Mrs. Pinney. In the early part of 1910 Mrs. Pinney was married to Fred Moore, and she died on May 14, 1911. Just prior to her mother's death Helen was taken to the home of Sulzen who was married to a sister of Helen's mother. The petitioner had taken out insurance on the life of his wife payable to the children upon her death. When she died he was appointed guardian of the person and property of the children by the probate court of South Dakota, the principal purpose of the proceeding being the collection of the insurance. Under the direction of that court he arranged with the Sulzens to care for and maintain Harvey and Helen for a time at the rate of $10 a month and to furnish $25 a year to pay for clothing the children. In February, 1913, Mrs. Sulzen died, and after that time the petitioner requested and tried to obtain the custody of Helen. Upon notice served upon the respondent the petitioner applied to the Iowa court which granted the divorce for a modification of the judgment giving him the custody of his daughter, and on March 18, 1913, the decree was amended, the court finding that the welfare of the children demanded that both of them be given into the absolute custody of the petitioner, and it was adjudged that he be given the custody and control of Helen and that Theodore Sulzen, in whose possession she then was, should de-

liver her to the petitioner. The respondent, Sulzen, refused to surrender the custody of Helen, and on February 18, 1913, a proceeding in habeas corpus to recover her custody was instituted by petitioner in the probate court of Douglas county, where the respondent resided, and the decision being adverse the petitioner appealed to the district court, and the judgment of that court being also against him he brought the case here by appeal. About the same time he began an original proceeding in habeas corpus in this court asking for the custody of his daughter, in which considerable additional testimony has been taken and presented.

The respondent bases his claim to the custody of the child, to whom he is not related, first upon the ground that the mother of Helen, shortly before her death, requested Mrs. Sulzen, now deceased, to take care of Helen, and that she and the respondent together consented to do so, and also on the further ground that the petitioner is an unfit person to have the custody of his child. The respondent owns and resides upon a farm. He married a sister of the mother of Helen when he was about thirty-eight years of age and has no children of his own. He testifies that he loves the child and is willing to make her an heir, but no steps have been taken towards the adoption of Helen or to give her the status of an heir. Since the death of his wife the only woman in charge of his home has been the wife of the tenant who occupies the farm house. Testimony was offered to show that shortly after the death of his wife respondent made an arrangement with a relative, who had a wife and children, to take charge of his place and care for Helen, and witnesses stated that these parties were worthy people and likely to give her proper care. It appears, however, that shortly afterwards they moved away from the farm and another tenant and his wife, strangers to the child, had taken their places. Some testimony was given to

the effect that for a part of the time at least Helen had not been given proper care by any one. Although respondent appears to be kind in his disposition and generous in his offer to care for Helen the testimony satisfies us that he is not situated so as to give her the attention and care that a girl of her years should have. If she can not have parental care and attention she should have, at least, the watchful and tender care and nurture that only a woman interested in her welfare can give.

The question remains whether she should be given into the custody of her father. Upon the death of her mother the custody of Helen naturally and legally passed to the petitioner, and it should be given to him unless he is manifestly unfit and incapable of performing his parental obligations to the child. This right was considered in *Swarens v. Swarens*, 78 Kan. 682, 97 Pac. 968, where it was said:

"The law regards the father, where, as in this case, the mother is not living, as the rightful custodian of his child as against the claims of all others. This right might, of course, be forfeited by conduct of the father showing him to be manifestly unfit to have the custody and care of his child. Courts, in the interest of minor children, may take them from their parents and place them elsewhere, even in the custody of strangers; but in the exercise of this extraordinary power the rights of the parent must be recognized and protected." (p. 684.)

The case of *In re Hollinger*, 90 Kan. 77, 132 Pac. 1181, was one where a divorce was granted the parties and the custody of their only child given to the mother. Afterwards the mother died, and the father then sought to obtain the custody of his child who had been given by the mother to her foster parent. In the opinion it was remarked:

"The right of a parent to the custody of his child will often yield to considerations of its welfare. But special circumstances must exist in order to open the

way to an inquiry in that regard. A court may not assume to disturb normal family relations merely upon a belief that it can thereby improve existing conditions. . . . The natural rights of the father were not completely annulled by the order in the divorce proceedings awarding the custody of the child to the mother; they were suspended for the time being, but they were revived in full force by the mother's death." (p. 78.)

While the *prima facie* right to the custody of the child is in the parent it is not an unconditional right. The well-being of the child is the prime consideration, and courts do not hesitate to take a child from its parents and give it to a stranger if the parents treat the child with cruelty, keep it in vicious or disreputable surroundings, or are unfit to be entrusted with its custody and control by reason of their habits, character or condition. As said in *In·re Hollinger,* supra, the court will not disturb the normal family relation nor take a child from its parent because a third person seeking its custody may have larger means and is therefore better able to give the child greater comforts, wider education and the promise of a larger inheritance. It has been decided:

"The unfitness which deprives a parent of the right to the custody of his children must be positive, and not comparative, and the mere fact that the children would be better nurtured or cared for by a stranger is not sufficient to deprive the parent of his right to their custody." (*Clarke v. Lyon,* 82 Neb. 625, syl. ¶ 4, 118 N. W. 472.)

The supreme court of Washington in treating of the same question said that the father "has the natural and legal right to the custody and control of the children, unless so completely unfit for such duties that the welfare of the children themselves imperatively demanded another disposition of their custody." (*In re Neff,* 20 Wash. 652, 655, 56 Pac. 383.)

In *Miller v. Wallace et ux.*, 76 Ga. 479, 2 Am. St. Rep. 48, it was said:

"*Prima facie,* the right of custody of an infant is in the father, and when this right is resisted, upon the ground of his unfitness for the trust or other cause, a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs. 'A clear and strong case' must be made to sustain an objection to the father's right." (p. 486.)

(See, also, Note, 41 L. R. A., n. s., 564.)

The attack on the fitness of the petitioner to care for his child is not because of recent misconduct, but is based on things done sometime in the past. There is a charge of indecent conduct towards a young niece alleged to have occurred about thirteen years ago. This charge is supported only by hearsay testimony, a statement of the person not sworn as a witness and which was repeated by a person who appears to be hostile to the petitioner. The charge has been denied, and besides some of the circumstances, including the cordial manner in which the niece subsequently met the petitioner, tends to refute the charge.

It is urged that the conduct of the petitioner towards his wife prior to their divorce tends to establish his unfitness for the guardianship of his daughter. Before the divorce there were a number of disagreements and separations between petitioner and his wife. According to testimony produced some of the requirements which he made of her were unreasonable and some of his acts toward her were unkind and harsh. Admissions were made by him of acts that were inconsistent with marital obligations, but they apparently grew out of the disputes and bickerings of the parties which ultimately ended in a divorce. He claims that he had grounds of a serious nature for refusing to live longer with his wife, but if it be granted that the reasons were insufficient, the question still remains whether the

custody of his child, whom he appears to love, shall be taken from him and given to a stranger. In the divorce action the court that examined into the conduct and character of the parties found the petitioner to be a fit person to have the custody of his son. It is true the custody of the daughter was awarded to his wife, but as the child was only about two years old at that time the custody was naturally given to the mother. After the mother's death the question of the custody of Helen came before the same court, notice of the hearing having been given to respondent, and the court granted the absolute custody and control to the petitioner, and based it upon a finding that the welfare of both of his children demanded that they be placed in his custody. In addition there is the decision of the probate court in South Dakota appointing the petitioner as the guardian of his children and their property. These rulings, however, do not preclude an inquiry in our courts as to the fitness of petitioner at this time to have the custody of his child. It has been held that a decree of divorce of another state awarding the custody of children to a father is not conclusive in a proceeding brought by the mother in this state to obtain their custody, but that the court has the power to change the custody if the best interests of the children require it. (In re Bort, Petitioner, &c., 25 Kan. 308, 37 Am. Rep. 255.) While the action of the Iowa court in modifying the decree of divorce as to the custody of Helen is not conclusive, it is worthy of consideration. In a case where there was a clash of jurisdiction between a district and a probate court as to the custody of a child it was said:

"It is peculiarly the province of the district court which renders the decree to modify that decree respecting the custody of children, and to determine whether the altered conditions warrant a change in the decree with respect to such custody." (In re Pettit, 84 Kan. 637, 643, 114 Pac. 1071.)

. A court granting a divorce is deemed to have a continuing jurisdiction which warrants it at any time after the decree in making any other or further orders in regard to the custody of the children as their welfare may require. The Iowa court, which sits where the petitioner has worked and lived for a considerable time, did determine on March 13, 1913, that the welfare of his child demanded that he be given its custody. The child has visited him a number of times, and he appears to have a strong attachment for her, and her little brother expresses his love for her and a desire that they shall be permitted to live together.

It has been satisfactorily shown that the petitioner is sober, industrious and in good repute in the neighborhood where he resides. The evidence of twenty-five of his neighbors has been produced, and they testify that he is a man of good character and habits and a fit person to have the custody of his daughter. The district judge, county attorney, collector of customs, clergymen, doctors, mechanics, and officers and members of fraternal lodges to which he belongs, all speak well of his character and habits. The manager of the company for which the petitioner has been working says that he has known the petitioner for about twenty years, and during that time he has borne a good reputation. He testifies that:

"He is a man of good habits, steady and reliable, industrious; does not drink; and I know that he makes a sufficient salary to care for his family."

Upon the testimony and all the circumstances in the case we are unable to say, under the governing rules of law, that the petitioner is unfit and should be deprived of the custody and guardianship of his child. He has not only the natural and technical legal right to her custody, but we think the welfare of his daughter requires that she be given into the custody of her father. It follows that the judgment of the district court must be reversed, and in the original proceeding

the order will be that the custody of Helen Beulah Pinney is awarded to her father, Perry F. Pinney.

BENSON, J. (dissenting) : I concur in the principles of law stated in the syllabus and opinion, but accepting the petitioner's own testimony of his treatment of his helpless wife, and her unfortunate child, the subject of this inquiry, given deliberately with full opportunity for explanation and extenuation, as true, I am constrained to agree with the findings of the district court and to dissent from the views of my associates.

A rehearsal of the testimony referred to would serve no good purpose, and is therefore omitted in this dissent. It is also omitted in the opinion.

In view of circumstances which have developed since the hearing in the district court, the custody awarded there should be changed but not given to the petitioner.