No. 21,691.

*In re* E. C. ZEIGLER, Petitioner (E. C. ZEIGLER, *Appellant,* v. HENRY DUSTO and IDA B. DUSTO, *Appellees.*)

### SYLLABUS BY THE COURT.

HABEAS CORPUS—*Father's Right to Custody of Minor Child.* The mother of a child having died, the father arranged with its grandmother to care for her for an agreed consideration. Subsequently, the father, having established a suitable home and provided for the care of his child therein, sought to obtain her custody, but the grandmother resisted. In the controversy following, it was found that the father was not unfit to care for his child, and therefore it is held that he is entitled to the custody of his daughter, although the grandmother is greatly attached to the child and might give her some attentions which the father cannot.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed December 7, 1918. Reversed.

*E. B. Morgan, A. S. Wilson,* both of Galena, and *S. H. Piper,* of Independence, for the appellant.

*Edward E. Sapp,* and *S. C. Westcott,* both of Galena, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The right to the custody of Ruth Zeigler, who is four years of age, is the subject of controversy between her father, E. C. Zeigler, and her grandmother, Mrs. Ida B. Dusto.

While there is considerable conflict in the testimony regarding the conduct and character of the parties herein, the appeal may be determined upon the findings made by the trial court. From these findings it appears that eleven days after Ruth was born, her mother died, and about that time an arrangement was made between her father and Mrs. Dusto that the latter should care for and support Ruth for a consideration of $20.00 per month. Mrs. Dusto was present when Ruth was born and has cared for her since that time. After this arrangement was made, the father visited Ruth with some regularity, about once a month, and made the stipulated monthly payments regularly for three or four years. These payments continued until a

business dispute arose between the petitioner and the respondents, who were then occupying a farm owned by the petitioner. For a few months thereafter the regular payments were not made, but during that time the Dustos had kept and sold products of the farm which belonged to the petitioner. After the dispute arose, and in December, 1916, the petitioner asked for a settlement and told the respondents that he was going to discontinue the arrangement for the care of the child and take her away. Whereupon Henry Dusto assaulted him, and shortly afterwards this proceeding was begun by the petitioner to obtain the custody of his daughter. It was found that while there had been some irregularity of life in the Dustos in the past, they had for a number of years borne a very good reputation in the vicinity in which they lived, and both seemed to be very much attached to Ruth. Their family consisted of themselves, two of their own children, who were still at home, and also the mother of Mr. Dusto. It appears that Mr. Dusto owns no property, except a five-room house, which is fairly well furnished, but is situated on property that does not belong to him, and his only means of support for the family is his earnings of $3.50 per day as a laborer in a smelter. As to Ruth's father, the court finds that he has accumulated property to the value of from $10,000 to $12,000; that for most of his life he has been engaged either as an employee or owner in the cigar and pool-hall business, and has a business of that kind at Collinsville, Okla., which is paying him from $300 to $500 per month. It is found that, excepting for a charge of having violated the cigarette law on one occasion, he has conducted his business in an orderly, law-abiding manner.

As to the ability of the father to care for Ruth, it is found that he has a modern five-room house, nicely furnished, and has arranged with a widow woman, fifty-one years old, of good character and reputation, to care for Ruth in case her custody is awarded to him. The court found that the petitioner bears a very good reputation among the people who know him, and that he is not personally unfit to have the care and custody of his daughter, but the court concluded upon all the facts that the best interests of Ruth, for the present at least, demands that she be allowed to remain in the custody of Mrs. Dusto.

Under the facts in the case the petitioner is clearly entitled to the custody of his child. It is not claimed that petitioner ever gave the child to the respondents to be kept as their own, or that he ever surrendered his parental right to her custody. The respondents' relation to her was a business one, through which they were to be paid a stipulated sum for her support and care for the time being. It may be assumed that this contract of the respondents was faithfully performed, and that they have become strongly attached to the child, and further that they are fit persons to rear such a child, but a parent cannot be deprived of his child because others love her and are fitted to care for her. (*Swarens v. Swarens,* 78 Kan. 682, 97 Pac. 968; *Pinney v. Sulzen,* 91 Kan. 407, 137 Pac. 987.) The fact that the respondents may give her attentions and comforts that the father cannot does not warrant a court in breaking the family relation. Ordinarily the love of a parent is more advantageous to the child than any creature comforts or other advantages that a stranger may offer. Here there is not only the parental relation, but the father, who manifests affection for and interest in his daughter, and who is found not to be unfit to have her care and custody and seems to be better able to provide for her comfort and education than are the respondents. It is true it is contended that the welfare of the child is the prime consideration, but courts cannot overlook the rights of a parent or the ties which exist between parent and child in determining the child's welfare. As was said in *In re Hollinger,* 90 Kan. 77, 132 Pac. 1181:

"A parent who is a suitable person for the purpose is entitled to the custody of a child as a matter of right as against anyone not its parent, irrespective of the question whether it might be better provided for by someone else who is willing to assume the obligation." (syl. ¶ 1.)

We are of the opinion that upon the facts found by the court the petitioner is entitled to the custody of his child, and therefore the judgment will be reversed and the cause remanded with directions to enter judgment in favor of the petitioner.