No. 24,143.

*In re* ALBERT C. WHITTAKER, *Petitioner, Appellant,* v. T. C. COFFMAN, DAVID W. SWYDEN, et al, *Respondents, Appellees.*

SYLLABUS BY THE COURT.

HABEAS CORPUS—*Custody of Adoptive Child—Adoptive Proceedings in Another State Regular And Valid.* In a habeas corpus proceeding by an adoptive father to obtain the custody of his adopted child, a failure to offer in evidence the statutes of the state in which the adoption proceedings were had is corrected in time when they are so offered in support of the motion for a new trial, since the cause was tried without a jury and the trial court had all the evidence before it as comprehensively and conveniently as it had at the original hearing; and when it is thus shown that the adoption proceedings were regular and valid, judgment awarding the adoptive father the custody of his adopted child should be entered as of course.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed January 6, 1923. Reversed.

*Grover Pierpont,* of Wichita, for the appellant.

*John Adams,* and *William J. Wertz,* both of Wichita, for the appellee.

Whittaker v. Coffman.

The opinion of the court was delivered by

DAWSON, J.: This was a proceeding in habeas corpus by Albert C. Whittaker to obtain the custody of his adopted child, who had been kidnapped by its natural father, David Swyden.

It appears that the principal parties in interest formerly lived in Connecticut. In 1915, the child in question was born to David Swyden and Lillian Swyden, his wife, in the town of Windham, Connecticut. In 1916, Lillian Swyden filed in the probate court for the district of Windham an application for guardianship, alleging that she was the mother of this child, Paul W. Swyden, then fifteen months old, and that the child was and for a considerable time had been in the care and keeping of Albert Whittaker and wife—

"Because the father of said infant child is wholly unable to care for said child, and in fact has not supported his children for several years, and as a result of his indolent and shiftless disposition is not a suitable or proper person to have the care, management and custody and control of said infant, Paul W. Swyden."

Pursuant to notice and a hearing, the probate court appointed Ernest P. Chesbro, a selectman of Windham, as guardian. Chesbro accepted the appointment. Thereafter, in May, 1917, an agreement of adoption was made between the guardian and Albert Whittaker and wife, the child's mother consenting, whereby the infant Paul became the adopted child of Whittaker and wife. Upon notice to David Swyden, a hearing was had before the probate court for the approval of this adoption agreement, and it was so approved on May 28, 1917.

Some two years later, when the child was four years old, David Swyden, who had taken up his abode in Oklahoma, came to Windham, Conn., and kidnapped the child from the front yard of his adoptive father's residence in Connecticut. He carried the child to Oklahoma and later to Wichita and placed it in the care of his sister. Eventually plaintiff located the child, and commenced this proceeding to obtain its custody. The main defense relied on by Swyden is that he never surrendered his rights as parent and natural guardian. At the trial the record of proceedings in the probate court of Windham, Conn., showing the mother's application for guardianship for the child, the appointment of the selectman as guardian on notice to David Swyden, and the agreement of adoption between the

mother, the guardian, and the Whittakers, and its approval by the probate court, on notice to Swyden, were all introduced in evidence.

The trial court found that the adoption proceedings in Connecticut were invalid "for the reason that the father did not consent" to the adoption, and gave judgment for defendant. Apparently this judgment was reached because of plaintiff's failure to introduce in evidence the pertinent provisions of the Connecticut statutes relating to the adoption of children, and the trial court applied the rule that in the absence of evidence to the contrary the laws of another state are presumed to be like our own (which would require the father's consent to the validity of the adoption) and that such rule and presumption were more potent than the mandate of the federal constitution requiring that "full faith and credit shall be given in each state to the . . . judicial proceedings of every other state." (U. S. Const., Art. IV, §1.) The justices of this court are not of one mind on the correctness of this reasoning and this precise point will not be determined because the want of evidence touching the Connecticut law of adoption was cured by its introduction at the hearing of the motion for a new trial, and it was then clearly shown that the proceedings in the probate court were in substantial conformity with the law of Connecticut. (Gen. Stat. of Conn. 1918, chapters 248, 249.) It was likewise shown by affidavits of the guardian and selectman, the probate judge, the clerk of the court, the town clerk, and the attorney for Lillian Swyden, that David Swyden appeared personally in the probate court and made a defense to the appointment of the guardian, and that he also personally appeared and was heard on the matter of the approval of the adoption agreement.

While it is true that there was no showing why the Connecticut statutes were not introduced in evidence at the trial, it seems apparent that it must have been because of plaintiff's reliance on the "full faith and credit" clause of the federal constitution. However that may be, the whole case was before the trial court just as comprehensively and conveniently on the hearing of the motion for a new trial as it was at the first hearing; it was not a jury case; and the trial court should have taken the Connecticut statutes into consideration as part of the evidence. There was no dispute about the facts. The fitness of the adoptive parent to have the custody of the child was not in question. The only defense of Swyden was that he had not consented to the adoption. The want of that consent, under Connecticut law, did not vitiate the adoption proceedings.

Whittaker v. Coffman.

In *Michigan Trust Co. v. Ferry*, 228 U. S. 346, 57 L. Ed. 867, 874, where the validity of a Michigan probate court proceedings had been challenged in Utah, it was held that the full faith and credit clause of the federal constitution governed such proceedings as well as ordinary actions. The court said:

"Upon this question courts of other jurisdictions owe great deference to what the court concerned has done. It is a strong thing for another tribunal to say that the local court did not know its own business under its own laws. Even if no statute or decision of the supreme court of the state is produced, the probability is that the local procedure follows the traditions of the place. Therefore we should feel bound to assume that the Michigan decree was not too broad, in the absence of statute or decision showing that it was wrong." (p. 354.)

It follows that the judgment must be reversed and the cause remanded with instructions to enter judgment for the plaintiff and directing that the defendants deliver the infant Paul W. Whittaker who is otherwise named in the record as Paul W. Swyden into the custody of his adoptive parent, Albert Whittaker, petitioner herein.

It is so ordered.

MARSHALL AND DAWSON, J. J. (concurring specially): We disapprove the reasoning of the majority, but hold that since the jurisdiction of the Connecticut probate court over the subject matter and the parties was not drawn in question, and the present fitness of the adoptive father was not in issue, the full faith and credit clause of the federal constitution was a complete bar to any further inquiry by the trial court and that the petitioner should have had summary judgment without any vexatious litigation whatsoever.

---

OPINION DENYING A REHEARING.

(Filed Feb. 19, 1923.)

SYLLABUS BY THE COURT.

HABEAS CORPUS—*When Adopted Child's Welfare is Not a Judicial Question.* It is only when an adoptive parent and lawful custodian of a minor child is an unfit person to have its custody that the welfare or "best interests" of the child can be drawn in question in an action to have it restored to him when it has been kidnapped from his custody; and when there is neither evidence nor finding of such unfitness, the welfare of the child is the concern of the adoptive parent and not the concern of the trial court.

The opinion of the court was delivered by

DAWSON, J.: In a petition for a rehearing in this case we are advised that in the trial below, after nearly three days were consumed in threshing out the matter thoroughly from all angles, the trial court found "the paramount issue to be the best interests of the child." As to that, it is sufficient to observe that since the adoptive parent and legal custodian, Albert C. Whittaker of the state of Connecticut, was not an unfit person to have its custody, the matter of the "best interests" of the child was vested in Whittaker's own discretion and parental solicitude, and the district court of Sedgwick county, Kan., had no concern therewith except to see to it that he and his adopted child were speedily restored to each other's society and permitted to depart for their Connecticut home without annoyance or delay. (*Swarens v. Swarens,* 78 Kan. 682, 684, 97 Pac. 968; *Crews v. Sheldon,* 106 Kan. 438, and citations, 186 Pac. 498; *Denton v. James,* 107 Kan. 729, 735, 193 Pac. 307.)

In support of the petition for a rehearing a number of affidavits are filed for the purpose of supplementing the record. These have been examined but they neither can nor do affect the result. (*Mason v. Harlow,* 92 Kan. 1042, 142 Pac. 243.) The abstract and counter-abstract sufficiently disclosed the pleadings, the record and evidence pertaining to the proceedings in the probate court of Connecticut upon which the adoption was founded, the statutes of Connecticut relating to adoption, and the controlling finding of the Sedgwick county district court which reads:

"Mr. and Mrs. Whittaker, who took this child when it was a mere infant and nurtured it through babyhood, have a strong claim to the custody of the child. From their standpoint and from the standpoint of what they have done in the past, together with the fact that the rights of the mother were surrendered to them in the adoption proceedings, they are perhaps the most deserving claimants for the custody of the child. They are entitled to and received the highest commendation for their unselfish and loving care of this helpless infant."

We note among the affidavits filed to support this motion for a rehearing are two given by the trial judge, one on behalf of the defendants reciting that the court offered to continue the trial to give counsel for the petitioner an opportunity to procure a copy of the statutes of Connecticut; and the other given in behalf of the petitioner reciting that counsel for the petitioner never waived the rights of the petitioner and that he pressed upon the trial court's

attention the full faith and credit clause of the federal constitution and presented an extensive brief thereon. In this connection we will have to repeat an observation heretofore made by this court:

"Whatever a judge may with propriety do should be done in the course of the trial and chronicled as a part of it, and not by supplementing the record by his personal affidavit." (*Emery v. Bennett,* 97 Kan. 490, 494, 155 Pac. 1075.)

The petition for a rehearing discloses nothing which this court overlooked in its consideration of this appeal, nor has it shaken our conviction of the justice of our disposition of it, and a rehearing is therefore denied.