*In re* Kailer.

No. 27,246.

In re the Application of DAVID KAILER for a Writ of Habeas Corpus,
Petitioner, *Appellee*, v. GEORGE KAILER et al., *Appellants*.

SYLLABUS BY THE COURT.

PARENT AND CHILD—*Right of Parent to Custody of Child.* Rule followed that
a natural parent is entitled to the custody of his children where he has not
legally renounced his right thereto, and where he has not forfeited that right
because of personal unfitness to be intrusted therewith.

Appeal from Sedgwick district court, division No. 1; J. EVERETT ALEXANDER,
judge. Opinion filed April 9, 1927. Affirmed.

*Charles B. Hudson* and *Clyde M. Judson,* both of Wichita, for the appellants.
*Ross McCormick,* of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The petitioner, David Kailer, brought this proceed-
ing in habeas corpus against his brother and·sister-in-law, George
and Margaret Kailer, to procure custody of his two children, Floyd
Jack Kailer and Dorothy Mae Kailer, twins, whom petitioner in-
trusted to respondents because of the death of their mother when
they were eleven days old, and because petitioner's financial and
domestic circumstances at that time made it impossible to properly
care for the infants himself.

Petitioner never surrendered his legal right to the custody of his
children, and contributed money towards their support. Later,
petitioner's financial circumstances greatly improved and he re-
married. His second wife was an intimate friend of his first wife and
well disposed towards the children and desirous to give them a
mother's care.

Meantime respondents had naturally become greatly attached to
the children and were loath to give them up, and by persuasion and
promises induced the father to withhold his insistence on their sur-
render. In time, however, respondents began to restrict the oppor-
tunities of the children and their father to enjoy each other's society
and companionship and eventually his right thereto was virtually
denied.

Hence this lawsuit, which originated in the probate court and was
appealed to the district court, where a trial was had. Findings of

Parent and Child, 29 Cyc. pp. 1541 n. 71, 1587 n. 42, 1588 n. 46; 20 R. C. L. 595.

fact were made, which included the matters summarized above and other details, including the following:

"3. Not being in a position to care for the two babies, the petitioner, a few days after the death of the mother, approached the respondents with the request that they take'them into their home and raise them as their own. After some discussion the respondents agreed so to do, upon condition, however, that the petitioner would not ask that the children be returned to him so long as both respondents should live, and upon the further condition that the petitioner would leave entirely to respondents the matter of the discipline of the children. This was agreed to by the petitioner, but he would not consent to their adoption by respondents nor did he surrender his right to their custody other than as before stated.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"5. All the expense incident to the care of the children except ten dollars per month, which has been contributed by petitioner, has been borne by respondents.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"7. The children are being well cared for by the respondents, who are likewise proper persons to have the care and custody of said children. It does not appear that the welfare of the children will be injuriously affected by their being taken from the custody of the respondents and delivered to the custody of the petitioner except to such extent as might naturally follow from the disruption of their present home life or be incident to the transfer of their affection and obedience from the respondents to the petitioner."

"CONCLUSIONS OF LAW.

"1. Not having surrendered his rights to the custody in the manner provided by law, the petitioner is not bound by his agreement with respondents that he would not ask for the children to be returned to him.

"2. Under the facts as found, the court has no discretion in the matter of decreeing who should have the custody of the children, Floyd Jack Kailer and Dorothy Mae Kailer. The petitioner is entitled to the relief prayed for."

Judgment was entered accordingly.

Noting respondents' objections to this judgment, it is urged that the welfare and best interests of the children were the paramount issue. Under the law of the land the welfare and best interests of children are primarily the concern of their parents, and it is only when parents are unfit to have the custody, rearing and education of children, that the state as *parens patriæ*, with its courts and judges, steps in to find fitting custodians *in loco parentium*.

Casuists could make a good argument that in the legendary case of the old woman who lived in a shoe, who had so many children she did not know what to do, the welfare and best interests of those children would be to rescue them from the scant regimen and Solomonic discipline of the worthy dame who had brought them into the

*In re* Kailer.

world, and to place them in homes of well-to-do, kindly foster parents; but so long as the old woman did her duty by her numerous progeny according to her ability, no court would have the right to displace her as their natural and lawful custodian.

Putting the matter in another way, it is quite correct to say that the welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be intrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves. There are enough of the latter sort of cases where the courts are compelled to interfere and take the custody of children from unfit parents, or to decide which of quarreling parents should have that custody—cases which search the hearts and consciences of judges as no other judicial duty does or can do. And no court should construe its intrusive jurisdiction as extending to cases where parents have done nothing offensive to law, morals, or good conduct, which would forfeit their paramount natural right of parenthood, which is to have the custody of their own children.

Touching the oral agreement between the litigants at the time the children were taken charge of by respondents, it hardly needs to be observed that babies are not property to be disposed of by parol contract. We note the industry of appellants' counsel who have found decisions and precedents at variance with this view of the law, but it is all familiar and settled doctrine in this jurisdiction. (*Swarens v. Swarens,* 78 Kan. 682, 97 Pac. 968; *In re Hollinger,* 90 Kan. 77, 132 Pac. 1181; *Pinney v. Sulzen,* 91 Kan. 407, 137 Pac. 987; *Buchanan v. Buchanan,* 93 Kan. 613, 144 Pac. 840; *In re Meyer, Petitioner,* 103 Kan. 671, 175 Pac. 975; *In re Zeigler, Petitioner,* 103 Kan. 901, 176 Pac. 974; *Crews v. Sheldon,* 106 Kan. 438, 186 Pac. 498; *Denton v. James,* 107 Kan. 729, 193 Pac. 307; *Jendell v. Dupree,* 108 Kan. 460, 464, 195 Pac. 861. See, also, *Whittaker v. Coffman,* 112 Kan. 594, 598, 211 Pac. 1116; 212 Pac. 912.)

Respondents call attention to the length of time they have had

custody of these children—something like eleven years. But during a considerable part of that long interval the father's forbearance to require their custody to be yielded to him was because of the solicitations of respondents and because they made it convenient for him to have the children with him and to visit them. Gradually this arrangement became less satisfactory; his opportunities for having frequent association with his children were curtailed, and eventually his right to visit his children at respondents' home was denied. Moreover, almost two years of this interval of time has been caused by this litigation.

The record contains no error and the judgment is affirmed.