### No. 27,426.

OPAL WOOD, *Appellee,* v. BARNEY T. LEE et al., *Appellants.*

#### SYLLABUS BY THE COURT.

PARENT AND CHILD—*Right to Custody of Child.* In the absence of the adoption of a child or of any legal proceedings awarding it to third persons, who had gained possession of it for a brief time, the petitioner, its mother, found to be a fit person to rear the child, has a superior right to its custody notwithstanding the respondents have larger means and are better able to give the child greater comforts, wider education and the promise of a larger inheritance.

Appeal from Reno district court; W. H. LEWIS, judge *pro tem.* Opinion filed June 11, 1927. Affirmed.

*Walter F. Jones,* of Hutchinson, for the appellants.
*Martin A. Aelmore,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In a habeas corpus proceeding it was determined that the petitioner, Mrs. Opal Wood, was entitled to the custody of her child, Vivian, as against the claims of the respondents, Barney T. Lee and his wife. The Lees appeal.

They insist the child was in fact abandoned, was placed in their custody to be kept as their own, and that the welfare of the child requires that its custody be awarded to them. On May 27, 1924, Opal Johnson, then unmarried and about sixteen years of age, gave birth to Vivian, in the Salvation Army hospital at Wichita. Her family refused to allow her to bring the child to their home in the country, which was a short distance from Hutchinson, and the reason given was that they did not want to bring reproach upon the family. A sister of Opal took the child from the Wichita hospital, when it was a month old, to the Salvation Army home in Hutchinson, and made arrangements for its care there. It appears that organization takes care of children when brought to the home, and also finds homes for them. The Lees, who are childless, had conferred with those in charge of the home respecting the adoption of a child, and later finding the child in the home the matter of the adoption of Vivian was considered. Some of the Johnson family

Parent and Child, 29 Cyc. pp. 1587 n. 42, 1588 n. 47, 1590 n. 55, 1591 n. 56, 59, 71.  Infants, 14 R. C. L. 271.

indicated they desired that Vivian should be placed with some good family and adopted. Those in charge of the Salvation Army home turned it over to the Lees, who say they understood it was to be left with them permanently as their own child. There were no adoption proceedings had. At a meeting of members of the Johnson family, including the representative of the home, at the office of the probate judge, the matter of giving up the child was considered, but the probate judge advised that Opal keep the child, and hence no proceedings looking towards adoption were taken. Mr. Nevitt, who was in charge of the army home and who turned the child over to the Lees; said that there was no adoption, nor was the child ever declared to be neglected or dependent. He further stated that there was no appointment of a guardian and nothing in writing made at any time in reference to the custody, care or keep of the child. Mrs. Wood, he said, had not at any time ever relinquished in writing or otherwise her authority over the child. Mr. Lee said he supposed that he would be given adoption papers, but learned that the probate judge had refused to issue such papers. He admitted he had never heard the petitioner say she was willing to give up the child, nor had she ever told him that she was giving the child to him. In December, 1924, Opal was married to C. A. Wood, and shortly afterwards she sought to regain the custody of her child. She learned in July, 1925, that the Lees had the child, and by letter and personal interviews asked them to return it to her, but they told her that they had become attached to Vivian and were going to keep him if possible and would put up a fight to that end. It sufficiently appears that they are respectable people, are without children and are disposed and able to give the child a good home. That they have no right to its custody because of adoption proceedings is conceded. They claim there was abandonment of the child by its mother and in effect a contract to give the child to them. The testimony tends to show that the child has never been declared neglected or abandoned. The officers of the army home who gave the child to the Lees say that the mother never relinquished by writing or otherwise her right to or authority over the child. It appears that there was no conversation between her and the Lees respecting the surrender of the child, and nothing approaching a contract to give it to them. In fact at her age she was not capable of making a binding contract, and besides, the custody of the child is not a matter to be determined

Wood v. Lee.

by contract. (*Chapsky v. Wood,* 26 Kan. 650; *Wood v. Shaw,* 92 Kan. 70, 139 Pac. 1165; *In re Kailer,* 123 Kan. 229, 255 Pac. 41.)

In view of the fact that there. was no adoption of the child nor any legal proceedings awarding its custody to the Lees or anyone else, the natural parent has the superior right to its custody, guidance and control, unless his mother is an unfit person to have such custody, care and control. The trial court has held, upon what appears to be sufficient evidence, that the mother is a fit person to rear Vivian and is entitled to his custody. The Lees appear to be exemplary people and doubtless have strong affection for the child, and perhaps may be able to provide him more comforts, greater pecuniary advantages, than his mother can, but the right to custody of a child cannot be determined alone on these questions. Of course the welfare of the child is the prime consideration in the disposition of the child, and it has often been decided that a child will not be taken from his parents because a third person seeking its custody may have larger means and be better able to give the child greater comforts, wider education and the promise of a larger inheritance. In *Buchanan v. Buchanan,* 93 Kan. 613, 616, 144 Pac. 840, it was said:

"Mother love and care may far outweigh financial means and prospects. Welfare cannot be measured alone by pecuniary benefits. Common experience and observation alike teach that property is not always the best heritage. This little boy will lose much by the disruption of the family and the deprivation of a father's counsel and care. To these great losses the court will not add separation from a mother's companionship and care merely because a more prosperous home with better financial resources is open to him." (See, also, *Swarens v. Swarens,* 78 Kan. 682, 97 Pac. 968; *In re Hickey,* 85 Kan. 556, 118 Pac. 56; *In re Hollinger,* 90 Kan. 77, 132 Pac. 1181; *Pinney v. Sulzen,* 91 Kan. 407, 137 Pac. 987; *In re Zeigler,* 103 Kan. 901, 176 Pac. 974; *Crews v. Sheldon,* 106 Kan. 438, 186 Pac. 498; *Jendell v. Dupree,* 108 Kan. 460, 195 Pac. 861.)

Aside from the finding of the court that the mother is a fit and proper person to rear her child, the testimony tends to show that she and her husband have the means to give it a suitable home. The judgment of the trial court awarding her the custody of the child accords with the law of nature and the law of the state.

The judgment is affirmed.