No. 31,621

J. E. TUCKER and EUNICE TUCKER, *Appellants*, v. WILLIAM P. FINNIGAN and GRACE FINNIGAN, *Appellees*.

(32 P. 2d 211.)

Opinion filed May 5, 1934.

*John Bertenshaw* and *Kirke C. Veeder*, both of Independence, for the appellants.

*A. L. Billings*, of Independence, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: The petitioners, as the parents and natural guardians of their daughter, Jeconiah Tucker, now about eight years of age, brought this proceeding for her custody, alleging that such custody was wrongfully withheld from them by respondents. The trial court, after hearing the evidence, remanded custody of the child to respondents. The petitioners have appealed.

The facts, so far as it is necessary to state them, are as follows: Late in the year 1927 the petitioners permitted respondents to take the child, then about two years of age, into their home. The child was never adopted by respondents, and it is not contended that there ever was an agreement that she should be so adopted. There is a conflict in the testimony as to just what the understanding or agreement was at that time between the mother, Eunice Tucker, and the respondent, Grace Finnigan, between whom the talk was had concerning the matter. They had been acquainted and good friends for more than fifteen years. The mother testified that because of financial stress and other circumstances, which need not be recited here, she was unable to get things for the child and provide for her as she would like to do; that respondents at the time were better situated in those respects; that she went to Grace Finnigan and told her troubles, and that Grace Finnigan offered

to take the child and to provide for her temporarily until petitioners were better able to do so, and to help them out. The respondent, Grace Finnigan, testified that the mother told her of the situation and said:

"Grace, I want you to take her. I know she will have a good home. She will be well cared for and it will make me happy. I will never interfere with your raising of her or never try to get her."

and that under those conditions she consented to take the child, and did take her to her home in Los Angeles. Soon thereafter petitioners went to Independence, Kan., which place was formerly the home of Eunice Tucker and where her parents lived, and where they have since made their home. At the time of the hearing of this case petitioners were living in a six-room home, near a school, the home was well furnished, Eunice Tucker was employed by the telephone company at $60 per month, and J. E. Tucker was operating a garage, which he testified netted him about $25 per week. J. E. Tucker had been twice married and divorced before his marriage to Eunice Tucker. After his separation from his first wife he was charged with neglecting the support of a child by that marriage and was ordered by the court to pay $25 per month for its maintenance, which he did for three or four years, until the child was adopted by its maternal grandparents. He was charged and pleaded guilty on three occasions to the violation of law, and served sentence therefor. All of these derelictions, however, were more than two years prior to the hearing of this case in the court below, and there was evidence tending to show that he had reformed with respect to all these matters. At any rate, the court did not find that he was an unfit person to have the custody of this child. Neither did the court find that the mother, Eunice Tucker, was an unfit person to have the custody of this child, nor is there in this record evidence which remotely could have supported such a finding had it been made.

The mother corresponded with Grace Finnigan regularly, making inquiries about the child and her welfare, sent presents to her on her birthday and at Christmas, and perhaps sent small sums of money at other times. Independence was the early home of Grace Finnigan, and in the summer of 1931 she was there visiting relatives and had the child with her. Petitioners visited with the child on that occasion and wanted to keep her. Mrs. Finnigan said she had

become attached to her and disliked to give her up. After talking the matter over she was permitted to take the child back to Los Angeles on her statement that she would return to Independence in the summer of 1932 with the child and they would then decide more definitely about the matter. She did not return with the child to Independence in 1932, and in the fall of that year Eunice Tucker went to Los Angeles to see the child and to bring her home. By this time the respondents apparently had made up their minds to try to keep the child in any event, and by subterfuge attempted to keep the mother from seeing her. However,-the mother did see the child, but respondents had employed attorneys and had filed a petition in the superior court at Los Angeles to be appointed guardians of the child. Confronted with this litigation, which she did not expect, the mother returned to Independence to confer with her husband and to determine what to do. They employed attorneys to defend the proceeding in Los Angeles, which was then dismissed. Respondent, Grace Finnigan, soon thereafter took the child to Chicago, where they remained apparently until in March, 1933, when they came through Independence on their way to Los Angeles, but did not advise petitioners they were coming, or of their presence there. However, petitioners learned of it and promptly filed this proceeding. The respondent, William P. Finnigan, is an experienced café manager and earns about $200 per month. His wife works as a waitress at the café several hours three or four days per week. They live in a suitable apartment, well furnished, usually have a servant or maid, and the little girl is well provided with food, clothing and toys. She was sent to a Catholic school over the objection of her mother.

. In this recital of facts we have purposely omitted details not essential to the determination of the case. The court found that by agreement of the two parties Grace Finnigan, at the request of the child's mother, agreed to take her and rear her as her own child, and further found that the petitioners had not shown as much interest in the child, or done as much for her, as they should. These findings are not sufficient to justify the court's order remanding the custody of the child to respondents. While we must give effect to the court's finding that the agreement was that Grace Finnigan was to take the child and rear her as her own, and that the mother would never interfere with this in any way, or try to get her, since the evidence on that point was controverted, this agreement, how-

ever solemnly made, does not bind the petitioners nor preclude them from maintaining this action, nor deprive them of the right to the custody of their child. Children are not the subject of gifts as is property. (*Chapsky v. Wood,* 26 Kan. 650.) In the absence of a finding that petitioners are unfit, they are entitled to the custody of their child. (*Andrews v. Landon,* 134 Kan. 641, 7 P. 2d 91. See *In re Kailer,* 123 Kan. 229, 231, 295 Pac. 41, and cases there cited; also, *Melroy v. Keiser,* 123 Kan. 513, 255 Pac. 978; *Wood v. Lee,* 123 Kan. 669, 256 Pac. 797.)

In the argument much is said about the welfare of the child. While that is a question which always enters into cases of this character, it is the settled policy of this state that unless parents are unfit, the welfare of the child is always best conserved by its being in their custody. Children are not taken from parents fit to have their custody simply because someone else can give them a better home. Aside from that it is not at all clear in this case that the respondents can give this little girl any better home than her parents can. Certainly the difference on that point is not enough to weigh heavily. Though the difference were much greater than is shown, it still would have no force, for the parents, being situated to care for this child and being fit persons to have her custody, are entitled to an order awarding the custody of the child to them.

Appellees argue that the findings of fact of the trial court, made on controverted testimony, are binding on this court, and cite authorities in support thereof. The rule, of course, is well established and is frequently applied. The trouble with applying it here is that the trial court made no finding which would justify its order giving the custody of the child in question to respondents. It was conceded they had not adopted the child, hence the only finding the court could have made which would have justified its order was one to the effect that petitioners are unfit to have the custody of the child. The court made no such finding, and certainly as to the mother of the child there is no evidence in the record which would have supported such a finding had it been made.

The judgment of the court below is reversed with directions to enter a judgment awarding the custody of the child to the petitioners.