NOT DESIGNATED FOR PUBLICATION

No. 122,294

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of L.L., a Minor Child, by and Through Next Friends C.W. and T.W.,
Grandparents,
*Appellants*,

and

D.L. and A.W., Natural Parents,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed April
16, 2021. Appeal dismissed.

*Linus L. Baker*, of Stilwell, for appellant.

No appearance by appellees.

Before ARNOLD-BURGER, C.J., BRUNS and POWELL, JJ.

PER CURIAM:  Mother and Maternal Grandparents (Grandparents) entered into a
"Co-parenting Agreement" which provided, among other things, that Grandparents would
share joint legal custody over Mother's minor child. Father, who retained his parental
rights, was not a party to the contract. Grandparents sought to have the agreement made
into an enforceable order by the district court. The district court denied Grandparents'
request. Grandparents raise several issues on appeal, but the overarching argument is that
the district court erred when it held that the coparenting agreement was not an

1

enforceable contract. Because we find that Grandparents lack standing to bring their claim, we dismiss this appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL HISTORY

This case involves Mother, her minor child (Child) age seven, and Grandparents. During the 2018 holiday season, Child visited her Father in Arizona after Father assured Mother that he would return Child to Kansas before school started in January 2019. After Child was left with Father, Father stated that he would not return Child and would keep her with him in Arizona. This resulted in a flurry of legal activity.

Mother and Father were never married, and no court had ever entered orders over visitation or custody. Grandparents, with Mother's consent, petitioned on behalf of Child for a determination of paternity and grandparents rights, as well as an emergency motion for temporary order of custody. Soon after, the district court granted the emergency motion and awarded Mother temporary sole legal and physical custody over Child. The court also ordered Father to return Child to Grandparents' residence where she would reside with Grandparents and Mother. At some point Father facilitated the return of Child to Mother's custody.

After Grandparents filed their motion but before the district court's order, Grandparents and Mother entered into a "Co-Parenting Agreement" establishing them as joint legal custodians of Child with Mother.

"[Mother] and [Grandparents] enter into the following agreement:

"[Mother] is the biological mother of a child, [Child] who reside with The [Grandparents] at . . . .

2

"[Mother] was in a non-married relationship with [Father] when the [C]hild was born and continued in such a relationship in Des Moines, IA until July 2013. At that time, the Father left the household for another woman. In January 2014, the Father abandoned [Mother] and the [C]hild and moved to Arizona. Since that time, the Father has had little parental involvement, has not provided nurturing, and has not supported the [C]hild financially. As between the father and [Mother], [Mother] is the primary parent.

"In May 2016, the [Grandparents] helped move [Mother] and the [C]hild to Kansas to live with them with all parties agreeing that this move was in the best interest of the child. The [Grandparents] continue to support [Mother] and the [C]hild financially. The [Grandparents] have historically provided shelter, nurture, encouragement, and guidance to the Child. The parties recognize that [Grandparents] are proper persons to assume part of the care, training, and education of the [C]hild.

"It is the intent of this agreement to provide a stable, nurturing environment, a good education, love and affection for the Child. [Mother] understands [she] has a right to decide upon the care, custody, and control of her [C]hild which, with that knowledge and now asserts her preference as a parent by entering into this co-parenting arrangement with [Grandparents] which is in the best interests of the child. The intent of this co-parenting arrangement is to promote the welfare and best interests of the child. By this agreement the parties shall have joint legal custody of the Child with residential custody of the Child to be with the [Grandparents] currently at . . . . [Mother] is sharing her rights and obligations as a parent with the [Grandparents] and by this agreement [Mother] is not abdicating her duties and responsibilities as a parent; she is sharing those rights, responsibilities, and duties with the [Grandparents] individually and jointly.

"[Mother and Grandparents] recognize that the [C]hild will benefit from this agreement. The Child is in her early adolescence and will soon be a teenager. She will continue to receive nurture, guidance, financial support, and encouragement from the [Grandparents]. The [Grandparents] also believe the [C]hild can obtain health and educational benefits upon an agreement with [Mother] to share her legal rights to custody and control of the [C]hild with the [Grandparents]. The parties agree that the [C]hild has developed bonding emotional attachments to not only [Mother] but also the [Grandparents]. These emotional and psychological attachments in the relationships were formed by consent of

3

the parties and this agreement and will further deepen those attachments to the benefit of the Child.

"The parties agree to cooperate with each other to enforce this agreement and particularly in regards to [Father] attempting to interject himself back into the life of the Child against all parties wishes. If necessary, the parties agree to have this agreement made an order of the Court . . . which would be to their benefit.

"[Mother] and the [Grandparents] are of sound mind and under no undue restraint or duress. They have read the agreement and understand it is a free and voluntary act. The parties agree that this co-parenting arrangement may not be terminated or otherwise revoked by either party unless the court . . . makes a judicial finding that the [Grandparents] are unfit co-parents."

In April 2019, Grandparents, now describing themselves as "co-parents" moved to have the coparenting agreement made an order of the court. The district court held a hearing on the motion. Although notified, Father did not appear or participate. Mother and Grandparents appeared and presented testimony to the court.

The district court promptly denied the motion. It ruled that a coparenting agreement between Mother and Grandparents was not enforceable, reasoning that "[j]oint legal custody is only between parents and not between a parent and a grandparent." The court questioned why Mother and Grandparents were not pursuing relief though some other mechanism, such as "guardianship, adoption, private CINC action, or obtaining a consent and explicit waiver of both Mother's and Father's parental preference rights." Finally, the court noted that it felt it was "without legal authority to adopt the co-parenting agreement . . . [however] the Court finds the Maternal Grandparents to be extremely credible and well-meaning grandparents that have a substantial relationship with the minor child and that it would be in the best interest of this minor child to consider a grandparent visitation rights written proposal if submitted."

4

The next day, Grandparents moved for more findings and to alter or amend the district court's judgment. Particularly, they wanted the district court to find that Mother had waived her parental preference. Father appeared by phone and participated in the hearing on Grandparents' motion. Father revealed that he intended to have Child live with him in Arizona. Grandparent's attorney later provided, for the first time, a copy of the actual coparenting agreement to the court—rather than their summary of what was in it.

After reviewing the coparenting agreement, the court determined that Grandparents were "asking this Court to allow only one of the [Child's] two known parents to irrevocably contract away or share legal custody rights with [Grandparents] without declaring them parents." Mother and Grandparents acknowledged that they were "seeking to contractually divide Mother's legal custody between three of them for the purpose of forming a joint defense against Father's assertion of his fundamental constitutional custodial rights to the minor child." The court declined to alter or amend its judgment. The court also declined to find that Mother had waived her parental preference.

Grandparents timely appealed.

ANALYSIS

At its heart, this case involves loving grandparents who are trying to do what they believe is best for their grandchild. We deeply empathize with their position. But we must look at the legal posture of the case and the law surrounding paternity and child custody issues to determine the purely legal question presented. Grandparents frame the issue as whether the coparenting agreement they entered with Mother is an enforceable agreement that the court can file and subsequently enforce in a paternity action—granting them standing as joint legal custodians. On the other hand, we believe the case begins and ends

5

with the jurisdiction of this court to consider this issue. With that in mind, we begin by examining the legal framework of paternity actions in Kansas.

*We examine the legal framework of paternity actions in Kansas.*

When a child is born, the Kansas Parentage Act (Act), K.S.A. 2020 Supp. 23-2201, et seq., sets out the rights and responsibilities of the father and the mother. This includes children born out of wedlock, as is the case here. A parent and child relationship is defined as "the legal relationship existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations. It includes the mother and child relationship and the father and child relationship." K.S.A. 2020 Supp. 23-2205.

A parent and child relationship is established between a child and a mother by proof of giving birth to the child. A parent and child relationship is established between a child and a father either by a court action establishing paternity or by a voluntary acknowledgment of paternity. K.S.A. 2020 Supp. 23-2207. As it applies to this case, that statute establishes a presumption that a man is the father of a child if he notoriously or in writing recognizes his paternity, including by allowing authorities to place his name on the birth certificate as the father. K.S.A. 2020 Supp. 23-2208(4). "The parent and child relationship extends equally to every child and every parent, regardless of the marital status of the parents." K.S.A. 2020 Supp. 23-2206.

Here there is no dispute about the identity of Father and his voluntary acceptance of that role, nor the identity of Mother. As a result, a child and parent relationship has been established between both mother and child and father and child with its attendant rights, privileges, duties, and obligations. No court has declared either parent unfit nor are there any pending actions to do so.

6

Because Mother and Father never married, a divorce action, which would typically set out custody orders regarding minor children, was not appropriate. But, "both the father and the mother have rights of custody and parenting time with the child unless a court order changes their rights. Custody, residency and parenting time may be spelled out in a court order and enforced." K.S.A. 2020 Supp. 23-2204(b)(3). So if there is any dispute about the custody of the child of unwed parents, a parent must bring an action under the Act to establish custody rights by court order.

*Grandparents launched a paternity action under the Act and significantly narrowed their claims on appeal.*

The twist here is that neither Mother nor Father initiated this action under the Act. The Grandparents did. Grandparents listed both Mother and Father as respondents. A "respondent" is "[t]he party *against whom* a motion or petition is filed." (Emphasis added.) Black's Law Dictionary 1569 (11th ed. 2019).

In their request for relief, Grandparents ask that the district court to:

1. Adjudicate Child to be the natural daughter of Mother (although there was never any dispute about that fact);
2. Enter an immediate order of legal and physical custody of Child to Mother;
3. Order that Father return Child from Arizona;
4. Grant grandparent visitation;
5. Award legal and physical custody to Mother and Grandparents with primary residence with them in Lenexa, Kansas;
6. Award child support.

The district court promptly granted the first three requests. Grandparents do not challenge those actions on appeal.

7

Grandparents presented no plan to the court for grandparent visitation although the district court suggested that it would have looked favorably upon such a request had Grandparents made it. See *In re T.N.Y.*, 51 Kan. App. 2d 956, 957-58, 360 P.3d 433 (2015) (finding that a court can determine grandparent visitations rights in a paternity action). Grandparents do not challenge or even address that ruling on appeal.

Finally, we find nothing in the record on appeal that suggests Grandparents pursued any action on Child's behalf for child support. The district court made no ruling on child support, and Grandparents do not challenge the lack of such a finding on appeal. See *Lawrence v. Boyd*, 207 Kan. 776, 778, 486 P.2d 1394 (1971) (finding that the "next friend" of a minor—his mother—may bring an action on the minor's behalf to enforce father's nonstatutory obligation of support). Issues not adequately briefed are considered waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

It became clear early in this lawsuit that Grandparents' primary request was for the district court to recognize as enforceable the coparenting agreement it entered with Mother and grant them legal custody of Child as coparents. They made no allegation that the contract they entered had been breached, merely that they entered a contract and that the court should recognize it, approve it, and give its seal of approval as part of its orders in the paternity action. Presumably, this would allow Grandparents to enforce the contract against Mother—to the detriment of Father—should their interests come into conflict. The district court noted that "[Grandparents] and Mother blatantly and explicitly admit that they are seeking to contractually divide Mother's legal custody between three of them for the purpose of forming a joint defense against Father's assertion of his fundamental constitutional custodial rights to the [Child] through this paternity action." The district court found that it was without legal authority to grant the requested relief and even if it could, the agreement violated the constitutional rights of the Father and was not in the best interests of the Child.

The failure of the district court to do their bidding in adopting the coparenting agreement is Grandparent's sole contention on appeal—though set out in four separate issues in their briefing. So the first question for us to resolve, and the one we believe to be dispositive, is whether Grandparents have standing to initiate an action under the Act for the relief they seek.

*We examine the standing of Grandparents.*

The requirement that a party have standing is a component of subject matter jurisdiction, which may be raised at any time, including upon the court's own motion. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 459-60, 447 P.3d 959 (2019). Standing is a question of law subject to unlimited review. *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013). A party without standing is essentially asking a court to render an advisory opinion, which would violate the separation of powers doctrine embodied in the Kansas constitutional framework. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008).

A court's power to decide an issue

"only arises when the question is presented in an actual case or controversy between parties. Standing is a requirement for a case or controversy. Standing is also a component of subject matter jurisdiction. As a jurisdictional matter, standing requires the court to decide whether a party has alleged a sufficient personal stake in the outcome of the controversy to invoke jurisdiction and to justify the court exercising its remedial powers on the party's behalf. [Citations omitted.]" *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015).

If the district court lacks jurisdiction, "'the appellate court likewise does not acquire jurisdiction over the subject matter of the appeal.'" *In re Care & Treatment of Emerson*, 306 Kan. 30, 39, 392 P.3d 82 (2017). When the record discloses a lack of

9

subject matter jurisdiction, the appellate court must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 85, 370 P.3d 1194 (2016).

In filing this action, the first problem we encounter is that Grandparents name themselves as parties as well as specifying they were acting as "next friends" of Child. A "next friend" is defined as "[s]omeone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, *but who is not a party to the lawsuit* and is not appointed as a guardian." (Emphasis added.) Black's Law Dictionary 1254 (11th ed. 2019). The requirement that the next friend not be a party to the lawsuit in his or her own capacity makes sense. It prevents the next friend from pursing a course of conduct that is beneficial to him or her as a party to the litigation rather than the best interests of the incompetent plaintiff. Often a court appoints a guardian ad litem in the role of next friend to be a neutral advocate.

But "[t]he usual and most widely approved practice, in litigation involving infants, is, in the first place, to appoint or recognize as the one rightfully entitled to act as next friend or guardian ad litem, the nearest relative of the infant not having an antagonistic interest in the matter, and not otherwise disqualified." 118 A.L.R. 401 (II)(a) (Originally published in 1939). For example, a minor's mother, as next friend, can bring an action on the minor's behalf to enforce a father's nonstatutory obligation of support. *Lawrence*, 207 Kan. at 778-79.

And this is supported by statute. K.S.A. 2020 Supp. 60-217 provides that every civil action must be prosecuted in the name of the real party in interest. It later provides that a minor may sue or defend an action with a representative. A representative includes a general guardian, a committee, a conservator, or a fiduciary. K.S.A. 2020 Supp. 60-217(c)(1). A parent is a natural guardian and has superior rights to the custody of their children over nonparents unless the parents are unfit or extraordinary circumstances exist.

10

*In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1104-05,442 P.3d 457 (2019). As to what constitutes "extraordinary circumstances,

> "[T]he welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be intrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves." *Kailer v. Kailer*, 123 Kan. 229, 231, 255 P. 41 (1927).

If a representative is unavailable, the minor may sue or defend by a next friend or a guardian ad litem. K.S.A. 2020 Supp. 60-217(c)(2).

There is no indication here that extraordinary circumstances existed to prevent Mother from pursuing this action as representative of the Child. Her failure to do so, absent extraordinary circumstances, would not be a reason for someone else to step into her shoes as next friend, even if she consented.

Grandparents also named themselves individually as parties to the action. "The purpose of the statute is to require that the action be brought by the person who, according to the governing substantive law, possesses the right sought to be enforced and not necessarily the person who ultimately benefits from the recovery." *Lawrence*, 207 Kan. at 778. Here, given that Grandparents were only interested in pursuing their status as coparents with Mother to the exclusion of Father, they were the ones to ultimately benefit from the action. They vigorously pursued no other claim. Accordingly, Grandparents are not legally appropriate next friends of Child.

So given that Grandparents could not properly name Child as a party to this action, we are left with an action by Grandparents against Mother and Father. All proceedings concerning the parentage of a child are governed by the Act. K.S.A. 2020 Supp. 23-2201(b).

Under the Act, a child *or any person on behalf of the child* may bring an action to (1) determine whether a presumption of paternity exists under K.S.A. 2020 Supp. 23-2208; (2) the existence of a father and child relationship that is not presumed; (3) revocation of paternity. K.S.A. 2020 Supp. 23-2209(a)(1), (2) and (e). Here, Grandparents make no allegations about paternity. They agree paternity here firmly rests with Father and did so in their petition.

Under the Act, "[i]f both parents are parties to the action, the court shall enter such orders regarding custody, residency and parenting time as the court considers to be in the best interest of the child." K.S.A. 2020 Supp. 23-2215(d). Only if a child in need of care proceeding has been initiated or if *neither parent* is fit to have residency, is the court allowed to give custody to a third party. K.S.A. 2020 Supp. 23-2215(e). Such an action sets in motion a process that may lead to termination of parental rights. Here, there has been no action filed against Mother or Father for termination of parental rights. In fact, both Mother and Father have made it clear that they want to fully exercise and retain their parental rights.

The Act also provides that in the original order of child support, it may award a "judgment to the mother or any other party who made expenditures for support and education of the child from the date of birth to the date the order was entered." K.S.A. 2020 Supp. 23-2215(f)(1). This would suggest that Grandparents could file a claim against Father for reimbursement of their expenditures toward the support and education of the Child. Grandparents make no such claim here and even to the extent that they

12

claimed to act as next friend of Child, they abandoned any child support claim or other reimbursement.

Our courts have held that a grandparent has standing to file an action in a paternity case to obtain grandparent visitation. See *In re T.N.Y.*, 51 Kan. App. 2d at 957-58. But Grandparents are seeking more than just visitation rights. They want the district court to give its blessing to a privately entered contract regarding parenting rights that undermine the parenting rights of Father with the hope that when the time comes, it will enforce any claim of breach of that contract by Mother and recognize their contractually established superior rights to custody.

We can find nothing in Kansas statute or caselaw that would give a grandparent standing to bring a paternity action against both mother and father in hopes that the court will assist it in enforcement at some yet undetermined time in the future of a private contract with mother, to the potential detriment of father. As such, we find Grandparents lacked standing to seek the only relief they request on appeal. For these reasons, we dismiss the appeal for lack of jurisdiction.

Appeal dismissed.