**In the Matter of Guardianship of**
**DONALD DE ALTIER PICKARD,**
**Minor**

Miscellaneous No. 3 - 1945

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

District Court Commissioner

April 5, 1945

CYRIL MICHAEL, *District Court Commissioner*

This is an application for permanent custody of a minor, 11 years of age, by his foster-mother, for permission to take the said minor with her to the United States and for authority to mortgage the minor's property for the purpose of obtaining funds to defray their expenses thither.

This application is being contested by the mother of the child.

The facts preceding the filing of this application are substantially as follows:

The claimant-mother, Constance Pickard, married Norman Pickard in 1933. At the end of the same year a son, Donald de Altier Pickard, was born to this union. In 1936 Norman Pickard instituted suit for divorce on ground of incompatibility and filed motion for temporary custody of the minor, pending determination of the suit.

The court, upon hearing of this motion, at which the defendant was present without counsel, and offering no objection, granted the motion. In 1937, on motion of the plaintiff, Norman Pickard, the divorce action was discontinued because of the reconciliation of the parties.

In 1938 Norman Pickard instituted another divorce action against his wife on ground of incompatibility. This action was uncontested, default adjudged and decree entered granting the divorce and awarding custody of the child to plaintiff. The decree provided that the child be permitted to visit defendant at reasonable times. Claimant testified that her husband had asked her for the custody because he was better able to support the child; hence, her default. In its findings the court states:

"That the defendant is of a nagging, irritable disposition; that her association with strange men, though not amounting to adulterous conduct, was sufficient to call for rebuke from her husband; that she resented these rebukes and quarrels would always ensue, much to the discomfort, mental and physical, of the plaintiff.

"That from defendant's conduct it appears that she is not a person to have the custody and bringing up of the child."

Four months after the divorce, while Norman Pickard was in the United States, he remarried. Meanwhile, the minor was taken care of by "a nurse," with whom the mother was acquainted. Norman Pickard returned to St. Croix with his second wife in 1939, taking Donald, the minor, who was then about 4 1/2 years old, to live with them.

Norman Pickard died in July, 1943, a period of about 4 years after Donald was in the home with them. Three days after his death Constance Pickard, mother of the minor, Donald, came from Puerto Rico, where she had taken up residence after the divorce, to claim her minor son. Upon her arrival she contacted D. Hamilton Jackson, Esquire, Attorney-at-law, who told her she could not get the child unless her aunt wanted it. She then contacted James A. Bough, Esquire, another Attorney-at-Law, who told her he did not see anything to prevent her getting the child. The testimony does not reveal whether she understood what she had to do in order to obtain the child. The fact is, no petition was filed by her praying for its custody. Her testimony that the same week she heard the court was in the United States is indicative that she was of the opinion that nothing could be done because of the Judge's absence. Shortly after, claimant returned to Puerto Rico.

While it does not form part of the record in this case and the contents thereof may not now be considered, but

being in the files of the court, it may be stated that on or about March 7, 1944, the Judge of the District Court, the Honorable Herman E. Moore, received a letter from Puerto Rico, which is on file in the Clerk's office, from one Lt. William I. Randall, employer of Constance Pickard, written on her behalf and making inquiry as to what she should do to obtain the child. This letter was acknowledged by the Clerk of the Court, who is the Commissioner hearing this case.

On January 18, 1945, Leonille Pickard filed this application.

With this background the court has three points to decide:

Point 1: Did the legal right to custody of the minor revert to Constance Pickard, his mother, after the death of his father to whom the court awarded custody in the divorce action?

Point 2: If it did, has the right to such custody been forfeited by the conduct of the mother?

Point 3: Even if she did not forfeit her right to custody, will it be to the child's best interest to deny applicant's petition and grant the mother custody of her infant child?

Point 1: Counsel for petitioner in his brief urges that: "In some jurisdictions it is held that where a decree of divorce awards custody of a child to the innocent party, it operates ipso facto to take from the guilty party all power thereafter over the child, and upon the death of the party to whom the custody was awarded, the other party does not become entitled to the possession and custody of the child." 20 R.C.L. par. 13, at page 599, note 14; 21 Ann. Cas. 466.

While this is so, the same authority states, categorically, that "a previous decision is not to be taken as res adjudicata, so as to conclude the court from determining

367

the question in view of the present facts." 20 R.C.L. par. 13, p. 598, Wilson v. Elliot, 97 A.S.R. 928 and note.

New facts in this case are shown to exist by the death of the father to whom custody of the minor was awarded and his failure to appoint a testamentary guardian as provided by the Code of St. Croix (1921), Title 3, Chapter 79, section 6, page 274 (15 V.I.C. § 826).

 If the custody of a child has been given to one parent in a divorce action, on the death of said parent, the right of the other revives. Penney v. Sulzen, 137 Pac. 987, Clark v. Lyon, 20 L.R.A. (n.s.) 171 and note; Barnes v. Long, 104 Pac. 296; Bryan v. Lyon, 54 A.R. 309.

As indications are that the majority rule is that the right of the surviving parent revives, and the Code of this jurisdiction also so provides, (1921 Code) Title 3, Chapter 79, sections 4 and 6 (15 V.I.C. §§ 824, 826), this court is warranted in holding that the right of the surviving parent in this case did revive, and it so holds.

Point 2: In his brief, counsel for the applicant concludes in part that: "The evidence adduced shows (1) that this court has found the mother of this child unfit to have its care and custody; (2) that the mother has not shown she is now fit; (3) that the mother is guilty of parental neglect and indifference, and has always left her children to the mercy of other relatives."

██-█ As to 1 and 2 of his conclusion, the evidence in this case does not show the mother is unfit. The court found in the divorce proceeding that "from the defendant's conduct it appears that she is not a person to have the custody and bringing up of the child;" but that was a case between the father and the mother. She is permitted in this case, which involves a third party, to show her fitness. Wilson v. Elliott, 97 A.S.R. 928, Bell v. Krauss, 146 Pac. 874, in re Neff 56 Pac. 383. The question is, has she shown herself now fit?

In examining the findings of the court it will be seen that the only finding against her in the divorce action which may have some bearing in this case, was "her association with strange men, though not amounting to adulterous conduct." There were no specific charges against her which would disqualify her now as unfit to have the custody and up-bringing of her child. Unless it is shown that her present conduct is inimical to the welfare and best interest of her child, the very findings of the court lapsed at the entry of the decree, since she could not thereafter and cannot now be found to be associating with "strange men," being unmarried. There was no finding which would now put the burden upon her to show reformation, and no misconduct since the divorce has been shown against her. The testimony shows that she is presently working and is living at the place of her employment in Puerto Rico.

"The moral unfitness which will deprive a parent of his child must be of a positive kind and such that intellectual and moral developments of the children cannot be expected at his hands." 20 R.C.L. par. 14, pp. 600, 601, Penney v. Sulzen, 137 Pac. 987, Clark v. Lyon, 20 L.R.A. (n.s.) 171 Ex parte Reynolds, 114 A.S.R. 86.

"It may safely be stated that the courts generally require clear and convincing proof of the fitness, for, as before stated, the presumption is that the parent is a suitable person for appointment as guardian, and the courts are reluctant to decree a separation of parent and child." Re Crocheron, 33 L.R.A. (n.s.) 874 note, Re Snowball, 104 Pac. 444, Re Lindner, 109 Pac. 100.

As to item 3 of the conclusion of the brief of counsel for petitioner, that the mother is guilty of parental neglect and indifference and has always left her children to the mercy of other relatives, the Court finds from the testimony that besides Donald, the minor herein, the claimant has only one child, Rubio Muckle, a boy now of 15 years, who has been living with his great aunt, claimant's aunt, the person who took care of her from childhood until she was married

369

to Norman Pickard. This child was taken care of by its mother until she got married. After her marriage the boy remained at the home of the great aunt, where he was born, but visited his mother's home frequently and at one time was kept by her and her husband for several months. After her divorce, she took up residence in Puerto Rico, the boy, Rubio, remaining with his great aunt. The mother corresponded with her aunt and at infrequent intervals sent money, suits and presents for the child's birthday.

With regard to the child, Donald, whose custody she is seeking, she claims and her claim is corroborated by the petitioner, that while in Puerto Rico she corresponded with the child's father and thereby obtained information of her son.

The mother's interest and concern about her child, Donald, and her desire to possess him is evidenced by her speedy arrival for that purpose upon receiving news of the father's death. This, together with the fact that she consulted two attorneys, trying "to enter through the straight gate of the law to obtain such possession, and not attempt to climb over it in some other and wrongful way," is not evidence of neglect and indifference. Because her attempt did not ripen into fruition it cannot be said that she is wholly to blame. She did not know what to do next.

Why she did not take the child, Rubio, home permanently to live after her marriage, a question put to one of the witnesses by counsel for petitioner, may be due to many things not known to said witness. It might be that her husband did not wish to have a child not his own in the home permanently, notwithstanding he was married to the mother. Again, after her divorce, economic pressure might have prevented her from remaining in St. Croix (the same as the applicant now finds it necessary to depart) and by the same token, may have found it impossible to take the child along. Having herself been brought up by the aunt,

370

it is not difficult to imagine it a really natural thing for her to have left the child in her custody, in whose home it was born. Regarding Donald, the evidence shows that as soon as her disability was removed, occasioned by the death of his father, her motherly yearning brought her to St. Croix to try to obtain his custody. That she was not successful is not to be placed wholly to her discredit, not being a person of much intelligence and the ways of the law not always being amenable to the uninformed without the aid of one learned therein.

It is therefore the opinion of the court that claimant has shown herself fit and under the circumstances her conduct in relation to both her children does not amount to indifference and neglect that would make her forfeit her right to the custody of her minor child, Donald.

Point 3: The third and last point for the court to decide is, if a change of custody will redound to the better interest of the child.

 It must be conceded that the majority of the authorities hold, in effect, that all considerations, legal and otherwise, pale into insignificance before this one question — the best interest and welfare of the child — Jones v. Darnal, 53 A.L.R. 545, Green v. Campbell, 39 A.S.R. 843.

Donald Pickard, the minor herein, lived about 4 1/2 years with his father and foster mother and about 2 years with his foster mother, after the death of his father, when the mother was unsuccessful in initiating proceedings for his custody. Donald says he does not remember his mother, but was able to point her out. He wants to remain with his foster mother. His foster mother in answer to a question, states that she did hear on the streets when Mrs. Constance Pickard, the child's mother, came from Puerto Rico that she was asking for her child, but that she had said at that time she would have to go to the court; that

just as much as she (his mother) loved him (Donald) she (Leonille Pickard) loved him. This attitude on the part of petitioner, while understandable, was not conducive to the fostering of love in the child for its natural mother.

It is not denied that Mrs. Leonille Pickard took the best care she could of the child while he was in the home with her and her husband and after her husband's death. But is this sufficient to deprive the mother of the custody?

"A parent who is of good character and the proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons and this rule applies although such others are much attached to the child and the child is attached to them and prefers to remain with them and they are in all respects suitable to have the custody of the child and able to support and care for it, or even though they are better able to afford the child material advantages." 46 C.J. Sec. 11, p. 1228.

Petitioner should like to have authority to mortgage the minor's property in order to obtain funds to take him and her to the United States where she wants to give him the best education she can. She has a mother, brother and sister there.

Claimant lives in Puerto Rico and is presently employed. She says she can take care of her child. The evidence shows she has taken care of children of an employer for several years. She lives at her place of employment but has a separate house. When asked by her attorney if the child were given to her if she would send him to school here in St. Croix, she replied she would until she could go to the States; that she has aunts and cousins in the United States. Claimant has been to the United States before.

With conditions as they appear, neither the applicant nor the claimant seem in a better position or better fit to take care of the child than the other. If they have to work for their own support and the support of the minor, it is clear the child would have to be left with someone during

the time they are out at work, whether it be here, the United States or Puerto Rico. Naturally, then, other things being equal, the parent's right must prevail over that of a stranger.

"In any contest before a court, for the custody of minor children, the welfare of the child or children is the matter of chief importance; and the consideration of their welfare will prevail over any mere preponderance of legal right in one or the other party. This test is applied not only in contests between the father and the mother of the child, but between either or both of the parents and strangers, and still more clearly where neither of the contending parties are parents of the child. But this consideration itself will lead the claim of parents to prevail over that of strangers, unless a clear case of unfitness on the part of the parent appears." 20 R.C.L., par. 15, p. 601, Miller v. Miller, 56 A.S.R. 166, Hernandez v. Thomas, 111 A.S.R. 137 and note, Miller v. Wallace, 2 A.S.R. 48.

It is true the allurement held out to the minor of being taken to the United States by the foster mother is a factor to be considered in the minor's desire to remain with her. On the other hand, will it be to his permanent welfare to remain in her permanent custody, or will it eventually redound to his spiritual and social benefit to have learned and experienced that which is dear to most everyone's heart, and to what in later life he may cherish as one of his greatest gifts — a mother's love?

In speaking about the kind of character which would be necessary to disqualify a parent from having the custody of its child a court said, "Nature gives to parents that right to the custody of their children which the law merely recognizes and enforces. It is scarcely less sacred than the right to life and liberty, and can never be denied save by showing the bad character of the parent, or some exceptional circumstances which render its enforcement inimical to the best interests of the child." Moore v. Christian, 31 A.R. 375, 376.

"In most states by statute the infant's interest is declared to be paramount, but this does not mean the immediate benefit but the ultimate advantage to the child. It will be presumed that the ultimate advantage is best served by the custody of the natural guardian." Balentine's Problem in Law, p. 822, 51 L.R.A. 839.

"It has been said in one case that there is such a diversity of religious and social opinion and of social standing and of intellectual development and of moral responsibility in society at large that courts must exercise great charity and forbearance for the opinions, methods, and practices of all different classes of society; and a case should be made out which is sufficiently extravagant and singular and wrong to meet the condemnation of all decent and law-abiding people without regard to religious belief or social standing before a parent should be deprived of the comfort or custody of a child." 20 R.C.L., par. 14, p. 600, Lowell v. House of Good Shepherd, 37 Pac. 660.

Taking all the circumstances of this case into consideration, will the court be justified in depriving the minor herein of that love which "is indeed the golden link that binds youth to age; and he is still but a child, however time may have furrowed his cheek, or silvered his brow, who can yet recall, with a softened heart, the fond devotion, or the gentle chidings of the best friends that God ever gives us"?

The court is cognizant of the fact that at the outset the minor will feel somewhat strange if a change of custody is ordered; but this condition will be only temporary. With the yearning of years of a mother for her child pent up in her breast, any mother thereafter, upon being reunited, would lavish that love and care upon the child and exercise such watchfulness and make such adjustments that must tend to bring into being a new outlook to both child and parent, which could not any more be satisfied with what was only a substitute and what was never intended by nature to take its place.

Because of all the matters herein considered, it is the opinion of the court that:

1. The legal right to custody of the minor, Donald de Altier Pickard, reverted to Constance Pickard, his mother, after the death of his father.
2. That the right to such custody has not been forfeited by any conduct of hers.
3. That it will be to the best interest of the minor to deny applicant's petition and grant custody of the minor to the mother.

Counsel for claimant will prepare an order consistent with these findings, such order to cover only the person of the minor.