IN RE WANETA PENNY, or JUANITA MURRAY. SAM. J. CLARK and FLORENCE MARIE CLARK, Petitioners, v. ROBERT F. and RHODA M. MURRAY, Respondents.

**Kansas City Court of Appeals, November 27, 1916.**

1. **HABEAS CORPUS: Parent and Child: Adoption.** The plaintiff instituted this proceeding by *habeas corpus*, on July 26, 1916, to obtain custody of Waneta Penny, the infant daughter of Florence Clark, one of the plaintiffs. The plaintiffs were married April 25, 1916, but Waneta was born February 19, 1915, in Kansas City at the Florence Crittenton Home, a charitable institution, and is the illegitimate offspring of Florence and one Harvey Heavener. On July 3, 1915, Florence executed and delivered to the Children's Home Society, an agreement, whereby she purported to deliver to the Society all her right, title and interest in the child to the society, but the agreement was never filed of record in the Recorder's office as required by the statute, until the institution of this proceeding. The Society in the interim had placed the child with childless parents, who adopted her. *Held*, that no right had been acquired by the Society, or by respondents through the society, when the mother withdrew her consent to divest herself of her rights of parentage, and by these proceedings in court asserted her full right, she could not be stripped except in the precise way prescribed in the statute. After the withdrawal of consent the society could not give life to the incomplete and wholly inoperative deed of release by filing it of record, and, thereby divest the mother of her right of custody without her consent.

2. ———: ———: **Statute.** When section 470, R. S. 1909, requires the contract of the parent to be evidenced in a certain way, that way must be strictly followed and every prescribed step must be treated as pertaining to a right or to the divestiture of a right, rather than as directory for the mere purpose of imparting public notice of the deed.

Original Proceeding in *Habeas Corpus*. Writ awarded.

*R. B. Garnett* for petitioners.

*S. J. Caudle* and *M. C. Aber* for respondents.

JOHNSON, J.—This is a proceeding by *habeas corpus*, begun July 26, 1916, by the petitioners Florence Marie Clark and Sam J. Clark, who are husband and

wife, to obtain the custody of Waneta Penny, the infant daughter of Florence. The writ was issued by one of the Judges of this Court in vacation and afterward the matter was transferred to the Court and set for hearing on the first day of the October term, at which time it was argued and submitted.

The petitioners were married April 25, 1916, and since their marriage have made their home in Kansas City. Waneta was born February 19, 1915, in Kansas City at the Florence Crittenton Home, a charitable institution and is the illegitimate offspring of Florence and one Harvey Heavener. On July 3, 1915, Florence, who then was nineteen years old, surrendered possession of her child to the Children's Home Society of Missouri, a corporation which has its headquarters in St. Louis and operates a Children's Receiving Home in Kansas City in charge of a superintendent who, at that time, was the Rev. T. R. Milnes. The mother of Florence conducted the negotiations with the society and paid the fee demanded for finding a home for the child which was the principal service the Society undertook to perform. Before receiving the child which was placed in his custody in Kansas City the Rev. Milnes required Florence to execute, acknowledge and deliver to him for the Society the following written agreement:

"This agreement, made and entered into this 3rd day of July, 1915, between Florence Marie Penny of the county of Jackson, State of Missouri, party of the first part, and The Children's Home Society of Missouri, a non-sectarian benevolent association, legally chartered according to the Constitution and Laws of the State of Missouri, party of the second part, witnesseth: That said party of the first part, being the mother and legal guardian of a female child, born on or about the 19th day of February, 1915, named Waneta Fay, in consideration of the benefits and advantages which said child may receive by and through said society, and from a loving desire to promote the best interest of said child, do hereby surrender and deliver

said child to said society, and hereby request and duly authorize the said society to secure for said child a home in a good family on the best terms possible, including legal adoption, indenture and such other conditions as circumstances may make possible or necessary.

And in consideration of the benefits and advantages said child may receive from such said Home by and through The Children's Home Society of Missouri, the party of the first part hereby waives and relinquishes all claims upon the service, time and earnings of said child and all legal rights over said child to said society and to the person, or persons, into whose home or homes said child may be placed by said society.''

This instrument was not filed for record in the office of the Recorder of Deeds of Jackson County until July 26, 1916, the date of the institution of the present suit. One of the purposes of the society, as set forth in its Articles of Incorporation, is ''to place homeless children in truly Christian homes and to assist the most promising from among them to obtain such thorough education as shall prepare them for enlarged usefulness.''

In the futherance of this purpose, the society indulged in practices, from which there was no deviation in the instant case, which seem most harsh and cruel. The object of these practices was to destroy the identity of the unfortunate child so that it would never know who its parents were and, of course, never see them, nor should the parents know in whose home the child finally found refuge, nor they who adopted the child know anything concerning its origin or ancestry.

When Florence signed the agreement and delivered up her child, she was told by the Rev. Milnes that ''the coffin lid was closed and she would never see her child again.'' The young mother was compelled to succumb to these hard conditions, not only by her own necessities, which were most extreme, but by her maternal love for her baby which prompted her to make any sacrifice that it might live. The child was taken

to St. Louis by the society and kept at the Home there until the society found a home for it with respondents who are a childless couple living at Warrensburg.

In a written contract entered into between respondents and the society on November 2, 1915, they adopted the child "as their own, thereby conferring upon her all the rights, privileges and responsibilities which would pertain to her if she had been born to them in lawful wedlock." Under this contract respondents received the child, took her to their home and ever since have lavished upon her all the care and love of natural parents. The child has thrived under their care and there can be no question about their ability and purpose to give her proper and suitable rearing and education.

On the other hand we perceive no ground upon which to base a conclusion that the interests of the child would be injured if she were given into the care of her natural mother. The mother fell under the wiles of a seducer and sinned, but before this offense and since, she was and is a woman of good character. Her co-petitioner, with knowledge of her history, married her, is devoted to her and to the cause nearest her heart (that of reclaiming her child), and is willing to treat the child as his own. He is able to support the family in a manner suitable to their station in life, and we do not hesitate in reaching the conclusion that in either home the child would be the recipient of tender parental care and service.

In such state of facts the natural parent must be regarded as having the superior and, indeed, the exclusive right to the custody of the child, and such right must be accorded to the petitioners, unless we are compelled to conclude that the young mother forever released all claim to her child when she signed and acknowledged the written agreement she entered into with the society.

Counsel for respondents contend that this instrument should be construed as a deed of release executed pursuant to section 470, Revised Statutes 1909, which

provides: "Such society shall have power to receive from the parents or surviving parent, of any child placed in its care, a release of the parental rights of such parents which release shall be by deed duly signed, acknowledged and recorded in the county or city where such release is delivered, as in the case of conveyances of real estate. Such release shall have effect to deprive the parents or parent executing the same of the right to the custody and control of said child and to its earnings during its minority."

Passing other questions and considerations without comment we hold in the construction of this statute that the filing for record must be regarded just as important and indispensable a step in the proceeding to forfeit parental rights as the execution or acknowledgment of the deed. Divesting a parent of his right to the custody of his child is always a serious matter, and any statute which authorizes such a proceeding must be strictly construed. When the statute requires the contract of the parent to be evidenced in a particular way, that way must be strictly followed and every prescribed step must be treated as pertaining to a right or to the divestiture of a right, rather than as directory for the mere purpose of imparting public notice of the deed. [Beach v. Bryan, 155 Mo. App. l. c. 60; Tyler v. Reynolds, 53 Ia. 146.]

As is well observed in the case last cited, the rights acquired under conveyances of real estate and similar instruments are different. Such rights do not depend on a statute; they are good between the parties if never recorded or acknowledged, but in the case at bar the instrument was incomplete and wholly inoperative until filed for record. Long before the society filed the deed in the county where it was delivered, in fact, as soon as she found herself, by marriage, able to support her child, Florence began a vigorous and persistent quest to ascertain where, and with whom, the child was living, with a view to regaining custody of it. The society refused to impart any information and she was compelled to bring a *habeas corpus*

suit at St. Louis in order to learn where her baby was. Then she brought a *habeas corpus* suit in the circuit court at Warrensburg and was defeated.

No right had been acquired by the society, or by respondents through the society, when she withdrew her consent to divest herself of her rights of parentage, and by these proceedings in court asserted her full rights of which, as we have shown, she could not be stripped, except in the precise way prescribed in the statute. After such withdrawal of consent the society could not give life to the incomplete and wholly inoperative deed of release by filing it for record and, thereby, divest the mother of her right of custody without her consent.

It follows from these considerations that the custody of the child should be awarded to the petitioners. It is so ordered. *Ellison, P. J.,* concurs; *Trimble, J.,* dissents.