No. 36,309

DORIS WILSON, *Petitioner,* v. THE KANSAS CHILDREN'S HOME AND SERVICE LEAGUE, *Respondent.*

(154 P. 2d 137)

Opinion filed December 9, 1944.

*Marlin S. Casey,* of Topeka, argued the cause, and *Robert T. Price* and *William M. Mills, Jr.,* both of Topeka, were on the briefs for the petitioner.

*James A. McClure,* of Topeka, argued the cause, and *Robert Stone, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, and *Benjamin F. Hegler,* of Wichita, were on the briefs for the respondent.

The opinion of the court was delivered by

HOCH, J.: This is an original proceeding in habeas corpus, in which a mother seeks possession of her baby, about two months old. Because of its nature the case was given early consideration following a hearing on November 13, 1944, and announcement made that the writ would be allowed and that formal opinion would follow later.

A summary of the facts that are not disputed follows:

In May, 1944, petitioner, a young woman twenty years of age, came to Lawrence from her home in another state and made her home with relatives living there. Expecting the arrival of a baby within a few months she got in touch with Mrs. Margaret Pierce, a social case worker at Lawrence, and through Mrs. Pierce arrange-

ments were made for her to go to the Crittenden Home in Topeka. Her child was born in Topeka on August 12, 1944, and given the name of Robert Lee Wilson. A short time after the child was born a representative of the Kansas Children's Home and Service League, located at Topeka, talked to her at the Crittenden Home, and some days later this representative called again and together they went to the Topeka office of the League. There, on September 25, she signed, before a notary, a printed form designated "Surrender of a Child." This form was not signed by anyone for the League. At the bottom of the printed form appeared the following: "The above and foregoing relinquishment and surrender is by me approved in open court this ——— day of ———, 194——. ———————, Probate Judge." This part of the printed form was not filled out or signed by the probate judge. Petitioner also executed before a notary public at the same time a document which has been designated as a waiver of appearance, reading as follows:

"I, Doris Wilson, am fully aware that having signed the surrender papers, I have relinquished all right to my child, Robert Lee Wilson. I also understand that a court hearing will be held in the Shawnee County Probate Court, Topeka, Shawnee County, Kansas, *for the purpose of giving full legal custody of Robert Lee Wilson to The Kansas Children's Home and Service League*, and I hereby waive appearance at this court hearing." (Italics supplied.)

Petitioner went back to the Crittenden Home, where she remained for a day and then returned to Lawrence. While living at Lawrence she had become acquainted with Mrs. Alice Blevins, who had a married daughter, Mrs. Edward A. Moore, who, with her husband, was living in Denver. The Moores had no children and for some time had desired to adopt a child. Mrs. Blevins wrote to her daughter telling her about the petitioner's baby and the Moores came to Lawrence and discussed the matter fully with the petitioner. On October 9, 1944, petitioner and Mrs. Moore went to Topeka. There the petitioner visited the office of the League and then went to the Crittenden Home, where she was given the baby and they then returned to Lawrence. A day or two after they returned Mr. and Mrs. Moore employed an attorney for the purpose of bringing proceedings for adoption of Robert Lee. Petitioner accompanied them and signed her consent to the adoption and together they went with the attorney to the probate court, where the papers were filed. The matter was continued until the following day. Mrs. Pierce was present and suggested the advisability of getting in touch with the

League in Topeka before proceeding further, and arranged by telephone for them to visit the office of the League. Mr. and Mrs. Moore then went to Topeka, taking the baby with them, and the baby was placed in a crib in an adjoining room while they held an interview with the superintendent of the League. They were then told that the League claimed legal custody of the child and return of the child to them was refused. They returned to Lawrence without the child. Petitioner immediately employed an attorney and accompanied him to Topeka where they visited the office of the League and where demand was made for the child. The demand being refused, the instant proceeding was instituted.

A number of affidavits have been filed by both sides, dealing in most part with the substance of the conversations at the various conferences heretofore referred to. In various particulars the affiants do not agree as to what was said. In view of the conclusion presently to be stated it is unnecessary to recite these or other conflicting contentions. We proceed to the issues of law presented.

Respondent contends that by her voluntary execution of an unconditional "surrender" of the child to a welfare agency authorized by law to receive and place children for adoption the mother lost all right to possession of the child. Respondent further alleges that the petitioner deceitfully obtained possession of the child by representing that she desired to care for him herself, although she was at that time planning to have the child adopted by the Moores, and it contends that because of such deception the mother is not now entitled to the child.

The petitioner contends that the so-called "surrender" is not binding because it lacks mutuality and does not purport to bind the League unconditionally to keep and care for the child, and also because she is a minor and the "surrender" was not submitted to or approved by the probate court.

Before discussing the issues the position taken by the respondent should be more fully stated. The respondent says that while it denies that the mother was told, as she alleges, that she could have the baby back at any time within three months it is ready and willing to return the baby to her at any time before legal adoption by others upon satisfactory showing that she intends to rear the baby herself. But it is not willing to surrender the child to the mother to be turned over by her for adoption by others. This, says respondent, is in line with its settled policy. In other words, respondent recog-

nizes no legal obligation to surrender the child to the mother but will do so if the mother will agree to rear the child herself.

The natural right of parents to custody of their minor children needs no fortification by citation of authorities. The only question is whether this mother, by signing a document which purports to evidence a surrender of the child to a welfare agency having the status accorded by law to the respondent, has irrevocably forfeited all right to her baby.

The respondent is a long-established welfare agency with a splendid record of humanitarian service in the care of destitute and friendless children and in finding homes for them. It bases its authority to receive and care for such children upon the provisions of G. S. 1935, 38-112, which is as follows:

"That any corporation heretofore organized under the laws of the state of Kansas having for its purpose the establishment and maintenance of a children's home for the control and management of destitute and friendless children, is hereby authorized and empowered to receive and retain such children, and provide them with homes until they reach their majority, upon such terms as the board of directors of such corporation may determine."

Respondent rests its claim that it is now vested with exclusive custody of petitioner's child primarily upon the provisions of G. S. 1935, 38-113, which is as follows:

"Any parent or parents unable to provide for their children, or furnish them the necessary support, may relinquish to such corporation in writing the control and management of such children; and *if the board of directors of said corporation, or the president thereof, shall accept such control and management,* such corporation shall thereupon be vested with the custody and management of said children as provided in section three (38-114) of this act." (Italics supplied.)

The "section three" (38-114) referred to *supra*, need not be set out here. In no way does it modify the requirements embodied in section 38-113.

The printed form captioned "Surrender of a Child" is lengthy and need not be set out here. It not only purports to evidence petitioner's surrender of her child to the League but it also recites that "The Kansas Children's Home and Service League hereby assumes the care, custody and legal guardianship of the above-named child on condition," etc. We need not recite or discuss the condition embodied in the printed form and which petitioner stresses as showing lack of mutuality and binding character. It is sufficient to note, in the first place, that the document itself bears no evidence that the

League has in fact assumed the obligation above recited. Moreover, even if the document bore the signature of some subordinate representative of the League that would not constitute compliance with the condition prescribed in the statute for the acquisition of custody by welfare agencies.

Section 38-113, *supra,* provides that when parents relinquish control of a child to a corporation to which the statute applies, such corporation shall be vested with custody and management of the child *"if the board of directors of said corporation, or the president thereof, shall accept such control and management."* There is nothing in the record before us to show compliance with the condition and no contention is made that there was such an acceptance either by the board of directors or by the president. It is elementary that a corporation, being a creature of statute, is bound by the provisions of the statute under which it was created. (19 C. J. S. 368; 13 Am. Jur. 770.)

Cases supporting the general rule are legion. The rule was applied in a Missouri case (*In re Penny,* 194 Mo. App. 698, 189 S. W. 1192), which was almost exactly like the one before us. In that case—a habeas corpus proceeding—a mother sought and was given possession of her child, then about seventeen months old. The child had been born in a Florence Crittenden Home when the mother was nineteen years old. When the child was four or five months old the mother surrendered possession to the Children's Home Society of Missouri, which was an incorporated welfare agency similar to the respondent in this case. The "surrender" document which she signed was in its pertinent provisions almost identical with the instant one. Under the Missouri statute the welfare agency was given power to accept a release of parental rights "by deed duly signed, acknowledged and recorded," etc. The deed of release was not recorded until the day the habeas corpus proceeding was begun, although the mother had previously sought in vain to secure from the society information as to the whereabouts of her child. The Missouri court held that when the mother withdrew her consent to divest herself of her parental rights the society had not acquired any right to the child because it had not recorded the instrument and that the mother's rights could only be divested "in the precise way prescribed in the statute." In the opinion it was said:

"Divesting a parent of his right to the custody of his child is always a serious matter, and any statute which authorizes such a proceeding must be

strictly construed. When the statute requires the contract of the parent to be evidenced in a particular way, that way must be strictly followed and every prescribed step must be treated as pertaining to a right or to the divestiture of a right, rather than as directory for the mere purpose of imparting public notice of the deed." (p. 702.)

The "surrender" document relied upon by respondent is without legal effect because control and management of the child was not accepted in the manner prescribed by law.

The conclusion above stated requires allowance of the writ. It is accordingly unnecessary to consider the issue arising out of the minority of the petitioner or other contentions made, and no view, one way or the other, is to be inferred from the fact that they are not here considered.

The writ is allowed.

DAWSON, C. J. and HARVEY, J., not participating.

HOCH, J. (concurring in result): I concur in the syllabus and in the corresponding portion of the opinion. But I think that the question involved in the minority of the petitioner, squarely raised on the record, should have been treated, because of its substantive importance and for the guidance of the respondent, which no doubt desires to comply strictly with the law in carrying on its excellent, benevolent work. I am impelled, therefore, to express my personal views upon that question.

As already noted, petitioner was twenty years old when she signed the "surrender." As far as the issue here is concerned she might as well have been sixteen or seventeen. Our statute as to the age of majority reads:

"That the period of minority extends in males and females to the age of twenty-one years: *Provided,* That every legally married person over eighteen years of age, while such marriage relation exists, shall be considered of the age of majority in all matters relating to contracts, property rights and liabilities, and the capacity to sue and be sued." (G. S. 1935, 38-101. See, also, G. S. 1935, § 44-637).

The proviso in section 38-101 is not applicable to the petitioner, as she was unmarried at the time here involved. And even if she had then been a married person I would not want to say that we would be dealing with a matter "relating to contracts, property rights and liabilities," etc. It is well settled that "the custody of a child is not a matter to be determined by contract," nor "the subject

of gifts as is property." (*In re Windell,* 152 Kan. 776, 107 P. 2d 708; *Tucker v. Finnigan,* 139 Kan. 496, 499, 32 P. 2d 211, and cases cited; *Wood v. Lee,* 123 Kan. 669, 670, 256 Pac. 797.) The primary concern is, of course, the welfare of the child and the custody of children is not taken from parents except under unusual circumstances, the most common being the unfitness of the parents to exercise such custody. If the respondent were entitled to custody its authority would not rest basically upon private contract but upon specific provision of the statute. It is true that the words "parent or parents" in section 38-113 are not specifically qualified as to age. But the statute must be construed in the light of the general law that is applicable. In my opinion it would be an illogical and unwholesome construction to say that the statute takes from a minor parent, in so important a matter, the protection which the law provides for minority. The general rule is that "persons within the age of minority" are "under legal disability." (G. S. 1935, 77-201, *Twenty-seventh.*) In *Wood v. Lee,* supra, which was a habeas corpus proceeding brought by a mother, the child had been in the possession of a welfare agency and then of the respondents for about three years. The mother was a minor when the child was born and the baby was delivered to the welfare agency when it was a month old. Although this court found that there had been no legal adoption or relinquishment, it added: "In fact at her age she [the mother] was not capable of making a binding contract," etc. (p. 670.)

I am not unmindful of the fact that when the law here involved (§§ 38-112, 38-113) was enacted in 1889, the age of majority for females was then eighteen, and that it was not raised to twenty-one until 1917 (Laws 1917, ch. 184, § 1). It might possibly be argued, therefore, that in construing and applying 38-113 there should be read into it a majority age of eighteen for women. In my opinion such a construction would be both unsound and confusing. When the age of majority for females was raised to twenty-one it was thereby raised for all legal purposes to which the new statute might be applicable; otherwise confusion would be introduced into many statutes. Section 38-113 was subject when enacted and is subject now to the limitation imposed by the statute, then or now existing, which fixes legal disability because of minority. And in any event a contention that eighteen should be considered the controlling age,

under section 38-113, would furnish no grounds for eliminating entirely the question of minority in construing that section.

Both by the constitution of this state (art. 3, § 8) and by the statutes probate courts have jurisdiction and the responsibility of protecting the interests of minors. By the very documents upon which respondent relies it has recognized this jurisdiction of the probate court, in some cases at least, over relinquishment of custody by a parent. As noted in the court's opinion, the "surrender" has at the bottom of the form a place for the probate judge to note his approval, but no such approval is shown. Although no hearing by the probate court was held respondent stresses the "waiver of appearance" signed by the petitioner which recites that a hearing would be held "for the purpose of giving full legal custody of Robert Lee Wilson to The Kansas Children's Home and Service League." If respondent already had full custody, as it contends, why a further hearing?

I can imagine few circumstances under which a minor would have greater need for protection of the probate court. And yet, no matter how distraught a young mother might be by the emotions incident to her situation, respondent's interpretation of the statute would make her "surrender" of her child irrevocable even though it might be signed not only without the protection of the probate court, but without independent legal advice or even without counsel from anyone bound to her by close relationship. Certainly the statute requires no such result.

In the case of adoption proceedings the statute relating to consent by parents or others standing *in loco parentis* provides that "minority of a parent shall not invalidate his consent." (G. S. 1943 Supp., 59-2102.) The necessity of that provision is obvious. Otherwise the probate court would be without power to effectuate a binding adoption of the child. If relinquishment to a welfare agency by a parent who is a minor is to constitute an irrevocable forfeiture of all parental rights certainly there is the same need for protection of the probate court as in the case of adoption proceedings. In the absence of any statutory provision to the contrary the general statutes relating to minority must be applied. In my opinion the "surrender" of her child by the petitioner, a minor, was invalid because it was not approved by the probate court.

While not essential to the disposition of the case I think it is also fair to the future interest of the child to record here a further brief

statement about petitioner and about Mr. and Mrs. Moore, to whom reference has been made. Following is an excerpt from the affidavit of Mrs. Margaret Pierce, employed as a case worker by the Douglas County Social Welfare Office:

"That on behalf of said Doris Wilson and the Douglas County Social Welfare Office, this affiant made an extensive investigation of Doris Wilson, both in Lawrence and at her home in ————; that from the investigation affiant found Doris Wilson to be a person of good character and reputation; that affiant continued her investigation personally in Lawrence and by mail through the Department of Social Welfare at ————; that information was obtained by said department from the school system, the city health department and from their own welfare records in the city of ————. A complete investigation at Lawrence, Kansas, by affiant failed to reveal anything detrimental to the character or reputation of Doris Wilson." (Name of the city and state here omitted.)

Other statements are of like character.

While no question of adoption is before us, I think it should also be noted, in behalf of Mr. and Mrs. Moore, that various affidavits of Denver residents have been submitted which bear testimony to their high character and to their ability to give Robert Lee a splendid home, and that they have been, since December 6, 1943, on the list approved by the Colorado State Home for Dependent and Neglected Children for adoption of a child. This statement is made in notation of the fact that allowance of the writ involves no disregard of the interests of the child.

SMITH, J., joins in the specially concurring opinion.