241 Kan. 810 (1987)
740 P.2d 82
IN THE INTEREST OF A.W., a Child Under the Age of Eighteen.
No. 60,075
Supreme Court of Kansas.
Opinion filed July 17, 1987.
John H. House, staff counsel, argued the cause and Roberta Sue McKenna, staff counsel for youth services, was with him on the brief for appellant, Kansas Department of Social and Rehabilitation Services.
Larry D. Hendricks, guardian ad litem, of Topeka, argued the cause and Robert T. Stephan, Attorney general, Gene M. Olander, district attorney, and Amy A. McGowan, assistant district attorney, were with him on the brief for appellee.
The opinion of the court was delivered by
HOLMES, J.:
The Kansas Department of Social and Rehabilitation Services (SRS) appeals from an order of the district court, in a proceeding to sever parental rights, which accepted the natural mother's relinquishment of her rights to the minor child and a subsequent order directing SRS to proceed with adoption proceedings of the child.
The parties, pursuant to Supreme Court Rule 3.05 (235 Kan. lxiv), submitted the matter to this court on the following agreed statement of the case:
"CASE HISTORY:
"A petition alleging this child to be a dependent and neglected child (under present law referred to as a child-in-need-of-care) was filed on February 3, 1978. The child was adjudicated on January 10, 1979, upon the stipulation of the natural mother to the allegations of the petition. The child was placed in the custody of the Department of Social and Rehabilitation Services and has remained so ever since. A petition to sever the parents' rights was filed in February of 1980, but that matter was later dismissed by agreement of all parties. A second petition to sever the parents' rights was filed on July 2, 1982, (district court case no. 82-JN-566) and a trial on that issue was held on October 27, 28 and 29, 1982. The judgment of the court was that the natural father's legal rights should be *811 severed and it was so ordered. The petition as to the natural mother was again dismissed by agreement of all the remaining parties. None of these matters are at issue in this appeal.
"CURRENT MATTERS:
"A motion to terminate the natural mother's parental rights was filed by the district attorney on February 7, 1986. It was scheduled for trial by the court on April 9, 1986. On that date the natural mother appeared in court and stated that she wished to relinquish her rights to the child. The natural mother appeared pro se. The court made inquiry into the voluntariness of the mother's action and her understanding of her rights. The court determined the mother understood her rights, voluntarily wished to waive them and instead enter a relinquishment to her child. The court then accepted her relinquishment and advised all parties present that upon the acceptance of this relinquishment by the Department of Social and Rehabilitation Services, the child would be placed with the Department for adoptive placement. The court did not hear evidence on the state's motion and did not enter any finding of unfitness on the part of the mother. The Department was not a party to this action and was not represented by counsel at this proceeding, although a social worker employee of the Department was present, having expected to be called as a witness at the trial of the state's severance motion.
"A certified copy of the Journal Entry from this hearing was delivered to the Department on May 29, 1986. The Department subsequently advised the court that, in the opinion of the Department, because the mother's relinquishment had not been made pursuant to statutory provisions, and because no finding of unfitness was made by the court nor a severance of her parental rights done as provided for in the Code for the Care of Children, that the Department did not consider the child legally available for adoption and, therefore, would be unable to consent to the adoption of the child.
"The court reviewed this matter on September 5, 1986, and determined that the court had the power to accept the mother's relinquishment, that the relinquishment accepted in this matter was valid, and that the child was legally available for adoption. The court further ordered the Department to proceed forthwith to place the child for adoption.
"The Journal Entry of the court's decision was filed with the Clerk of the District Court on September 23, 1986, and a certified copy was delivered to the Department on September 24, 1986. The Department filed notice of its appeal of the court's decision on October 3, 1986.
"ATTACHMENTS
(1) certified copy of Journal Entry from April 9, 1986, hearing
(2) certified copy of Journal Entry from September 5, 1986, hearing
(3) certified copy of Department's Notice of Appeal filed October 3, 1986."
It should also be noted that the court reviewed the proceedings on July 3, 1986, at which time the mother of the child appeared by counsel; on July 17, 1986, when the mother again appeared pro se; and on August 1, 1986, when the mother did not appear at *812 all. A count-appointed guardian ad litem appeared on behalf of the minor child at all proceedings.
At the close of the proceedings on April 9, 1986, the court, inter alia, made the following order:
"[T]he relinquishment by [C.W.J., the child's natural mother] is approved. Upon acceptance of this relinquishment by the Department of Social and Rehabilitation Services, all legal and physical rights to the minor child herein shall be given to the Department of Social and Rehabilitation Services with authority to consent to adoption or appropriate placement."
At the September 5, 1986, proceedings the court again found the relinquishment was knowingly and voluntarily made and was a valid relinquishment of parental rights. The court ordered that the care, custody, and control of the child be placed with SRS for adoptive placement and ordered that SRS proceed with adoption procedures forthwith. The natural mother did not object to any of the proceedings and there is nothing in the record that would indicate she desired at any time to rescind her relinquishment of the child. The record does reflect that on May 19, 1986, she approved the journal entry of the April 9, 1986, proceeding.
It is the position of the district attorney that the Kansas code for care of children should be liberally construed to meet the best interests of the child as mandated by K.S.A. 38-1501. It is also asserted that the court, having jurisdiction of all interested parties, has the inherent power to accept a voluntary relinquishment from a parent when that is in the best interests of the child. The inherent power of the courts has been described as:
"The phrase `inherent powers' is used to refer to powers included within the scope of the court's jurisdiction which a court possesses irrespective of specific grant by constitution or legislature. Such powers can neither be taken away nor abridged by the legislature." 20 Am.Jur.2d, Courts § 78.
SRS, on the other hand, takes the position that because the mother's relinquishment was not made in strict compliance with statutory provisions, and because no finding of unfitness was made by the court nor a severance of her parental rights ordered as provided for in the Kansas code for care of children (K.S.A. 38-1501 et seq.), SRS does not consider the child legally available for adoption and, therefore, is unable to consent to the adoption of the child. It is contended the district court had no *813 authority to accept the mother's relinquishment when it had not been made in compliance with statutory procedures.
Statutes provide that parental rights may be terminated in two ways: (1) by relinquishment to a corporate children's home pursuant to K.S.A. 38-112 et seq. or by relinquishment to SRS pursuant to K.S.A. 38-125 et seq.; and (2) by severance of parental rights in a proceeding pursuant to the Kansas code for care of children as set forth in K.S.A. 38-1581 et seq. Relinquishment to a corporate children's home under K.S.A. 38-113 is not involved in the present appeal. The statutes applicable to a relinquishment to SRS are K.S.A. 38-125 through 38-129.
K.S.A. 38-125 provides:
"Any parent or parents or person in loco parentis of a child may relinquish and surrender such child to the department, and if the department shall accept said child in writing, the department shall thereupon stand in loco parentis to such child and shall have and possess over such child all the rights of a natural parent or legal guardian, including the power to place such child for adoption and give consent thereto. Minority of a parent shall not invalidate such parent's relinquishment and surrender of said child."
K.S.A. 38-126 requires the relinquishment to be in writing and specifies who must execute the relinquishment.
K.S.A. 38-127 provides:
"The relinquishment provided by this act shall be signed and acknowledged before the court by the person or persons by whom it is executed and shall sufficiently identify the child or children so relinquished. It shall be the duty of the court, in all such cases of relinquishment so executed, to advise the parent or parents or other person in loco parentis of such children of the consequences of the act of relinquishment."
K.S.A. 38-128 provides:
"In all cases where a parent or person in loco parentis has relinquished and surrendered his child to the department pursuant to this act, and the judge before whom the relinquishment was executed shall have stated on the relinquishment document that the parent or the person in loco parentis had been advised by him of his rights and that the act of the parent or person in loco parentis was voluntary, all the rights of the parent or person in loco parentis shall thereupon be terminated, including the right to receive notice in a subsequent adoption proceeding involving said child."
K.S.A. 38-129 grants the district court authority to grant visitation rights to the grandparents of the minor child. Thus it is clear that in the final analysis any relinquishment to SRS must be determined by the court after a full explanation of the parent's rights *814 and a finding by the court that the relinquishment is the voluntary act of the parent.
Severance of parental rights is authorized by K.S.A. 38-1583(a), which provides:
"When the child has been adjudicated to be a child in need of care, the court may terminate parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."
In the present case the minor child had been the subject of child care proceedings since 1978 with custody placed in SRS. The motion to sever parental rights was filed by the district attorney presumably at the request of SRS. K.S.A. 38-1529(a). On the day scheduled for hearing that motion, the natural mother of the child appeared in open court and advised the court that she desired to relinquish her rights to the child to SRS. She was fully advised of her rights and the consequences of relinquishment by the court. She subsequently approved in writing the journal entry which recited the court's actions and approved her relinquishment. It is the position of SRS that the statutes controlling relinquishment of parental rights and severance of parental rights must be strictly complied with in order for SRS to be able to give a valid consent to a subsequent adoption. We agree that the termination of parental rights is an extremely serious matter and may only be accomplished in a manner which assures maximum protection to all of the rights of the natural parents and of the child involved. In In re Cooper, 230 Kan. 57, 631 P.2d 632 (1981), we stated:
"Virtually all jurisdictions including Kansas recognize the parents' right of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause." 230 Kan. at 64.
Appellant relies heavily upon our decision in Wilson v. Kansas Children's Home, 159 Kan. 325, 154 P.2d 137 (1944), which involved the relinquishment of a child to a children's home under G.S. 1935, 38-113, the predecessor to K.S.A. 38-113. In Wilson the formalities of the statute were not strictly followed and the court found the relinquishment document to be invalid. In doing so the court relied upon the Missouri case of In re *815 Penny, 194 Mo. App. 698, 189 S.W. 1192 (1916), and quoted from that opinion:
"`Divesting a parent of his right to the custody of his child is always a serious matter, and any statute which authorizes such a proceeding must be strictly construed. When the statute requires the contract of the parent to be evidenced in a particular way, that way must be strictly followed and every prescribed step must be treated as pertaining to a right or to the divestiture of a right, rather than as directory for the mere purpose of imparting public notice of the deed.'" 159 Kan. at 329-30.
The statutes pertaining to adoption are likewise to be strictly construed to assure that the rights of the natural parents, the child, and the adoptive parents are fully protected. See 2 Am.Jur.2d, Adoption §§ 5-7. There can be no greater emotional trauma and distress than that which results from an attack upon a defective adoption proceeding, perhaps years later, and which disrupts the lives of all of the participants.
SRS apparently takes the position that if there is a proceeding to sever parental rights pending, then the parent or parents can never agree to a voluntary relinquishment pursuant to K.S.A. 38-125 et seq. It relies upon a manual it has prepared for guidance of SRS employees involved in providing youth services (Kansas Manual of Youth Services). The subject of voluntary relinquishments is discussed in section 4521 of the manual, which states in part:
"If a CINC [child in need of care] petition has been filed and adjudication is pending, relinquishment is never an option. This is true whether the petition is for a CINC child or termination of parental rights. It is the agency opinion that parents facing the stress of the adjudicatory hearing could claim that they were under duress when they signed the relinquishment."
While the objectives of SRS in seeking to protect all parties is laudable, we feel application of the internal operating procedures to the facts in this case were counterproductive and worked to the detriment of the parties involved. The issue before this court is not whether the internal operating procedures of SRS were followed to its satisfaction, but whether the court, under the facts of this case, had the authority to accept the mother's relinquishment made in open court.
K.S.A. 38-127 requires that when a parent desires to relinquish a child to SRS, it must be done in writing and signed and acknowledged before the court. The statute further provides that *816 it shall be the duty of the court to advise the parent of his or her rights and the consequences of the act of relinquishment. K.S.A. 38-128 provides the court must find that the parent has been fully advised and that the parent's actions are voluntary. Obviously the court must refuse the relinquishment if it finds the parent has not been fully advised or that the relinquishment is not voluntary. The converse of that authority is that the court, having determined that the proposed relinquishment is voluntary and that the parent has been fully advised of all rights and consequences, has the power to approve the relinquishment. We do not agree with the procedural guidelines of SRS that the mere pending of a proceeding precludes any voluntary relinquishment. The court is in the unique position of being able to render an impartial determination of the parent's true intent and desire and to protect the parent's rights. We find no merit in the contention that judicial proceedings, per se, subject a parent to duress which might invalidate a voluntary relinquishment. Some might even speculate that the procedures of SRS could amount to duress in certain circumstances.
SRS had been familiar with the family here involved for years. It had the custody and control of the minor child and was thoroughly advised, as was the court, of the background and history of the family. It appears that if there had not been a motion pending to sever the mother's parental rights, a voluntary relinquishment following SRS procedures would have been acceptable. If SRS had brought its forms to court and had them executed by the parent, there would have been technical compliance with the statutes. We do not believe that a knowing and voluntary relinquishment of parental rights done in open court, with all the surrounding safeguards guaranteed by the judicial process, should be subject to an arbitrary refusal by SRS to accept the relinquishment. The court had jurisdiction of the parties and the subject matter and its orders do not exceed its power and authority. To force the mother in this case to a full hearing with evidence as to her inability and unfitness as a mother would have accomplished nothing more than the court did in this case. No statute, law, or common sense requires the court to perform a useless act. In re Adoption of Baby Boy L., 231 Kan. 199, 209, 643 P.2d 168 (1982).
*817 We hold that under the facts of this case, where all of the rights of the natural mother were fully protected by the trial court and all of the requirements of the statutes for the protection of the mother were fully met, the court had the inherent power to accept the relinquishment. We find no error in the court's acceptance and approval of the relinquishment. We also hold that, as SRS voluntarily became a party to the proceedings and was fully represented, the order directing SRS to proceed with adoption proceedings was valid.
The judgment is affirmed and the case remanded for further proceedings consistent with the views expressed herein.