NOT DESIGNATED FOR PUBLICATION

No. 119,745

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF P.R.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed May 31, 2019. Affirmed.

*Rachel I. Hockenbarger*, of Topeka, for appellant natural mother.

*Morgan L. Hall*, deputy district attorney, for appellee State of Kansas.

*Samantha R. Harrington*, of Topeka, for appellees adoptive parents.

Before MALONE, P.J., SCHROEDER, J., and MCANANY, S.J.

PER CURIAM: This case centers on the termination of the parental rights of T.R. (Mother) to her minor child, P.R., and the court's subsequent placement of the child with his foster parents for the purpose of adoption. In this appeal, Mother argues that the relinquishment of her parental rights was not effective because the Kansas Department for Children and Families (DCF) did not accept her relinquishment in writing and, in any event, she did not knowingly relinquish her parental rights to her child. She also claims the district court erred and denied her due process in finding her to be an unfit parent and terminating her parental rights on this basis. We are not persuaded by Mother's arguments and affirm.

This all began when, on March 30, 2015, the State filed its petition seeking to have Mother's five-week-old son declared to be a child in need of care (CINC) pursuant to

1

K.S.A. 2018 Supp. 38-2202(d)(1)-(3). Mother stipulated to the facts asserted in the State's petition, which asserted that Mother, who had been smoking marijuana, left the child unattended for a period of time in a hotel room which was registered to some unknown person. It was the hotel desk clerk who called the police upon learning that the child had been left unattended. Mother told the police she had been smoking methamphetamine one to two days earlier. The court adjudicated the child to be a CINC.

Throughout these proceedings paternity remained an open question. In fact, four different individuals were named as possible fathers in various journal entries, and other journal entries simply listed the father as "Unknown."

The court placed the child in the temporary custody of DCF. The initial goal was to reintegrate Mother with her child. But over the course of the next 21 months, Mother failed to fulfill the requirements of her reintegration plan, failed to demonstrate an ability to parent her child, failed to abstain from using drugs, and failed to maintain steady employment.

As a result, on January 18, 2017, the State moved to terminate Mother's rights or to appoint a permanent custodian pursuant to K.S.A. 2018 Supp. 38-2266. As a result, the court changed the goal of the proceedings from reintegration with Mother to adoption of the child.

On March 30, 2017, Mother executed a relinquishment of parental rights to DCF. The relinquishment contained the following language at the top of the first page in bold type:

"**NOTICE TO PARENT OR PERSON IN LOCO PARENTIS: This is an important legal document and by signing it you are permanently giving up all custody and**

**other parental rights to the child named herein. You are to receive a copy of this document**."

The relinquishment was not conditioned on the occurrence of any event and instead was a complete and total renouncement of Mother's parental rights to her child to DCF, including any right to be notified of and to consent to an adoption. The relinquishment document also contained a certification by Mother's attorney that she had fully explained to Mother the consequences of executing the relinquishment as well as an acknowledgment by a notary public that Mother freely and voluntarily signed the document. The signature line for DCF was left blank.

On October 2, 2017, the district court found that all necessary parties, including the putative fathers, had been properly served with the State's motion to terminate parental rights and set the matter for trial in January 2018.

On January 8, 2018, a week and a half before the scheduled trial date, Mother filed the previously executed relinquishment of her parental rights. The trial proceeded as scheduled against the putative fathers, none of whom appeared, and on January 16, 2018, the district court found that Mother had relinquished her parental rights to the child, all of the putative fathers were unfit due to their abandonment of the child, and it was in the best interests of the child to terminate the parental rights of her father—whichever one he was. Finally, the foster parents orally moved to rescind DCF's authority to consent to an adoption of the child, which the court granted. (The order memorializing these findings was not filed until July 5, 2018.)

After the termination of the parental rights of the child's father and the relinquishment of Mother's parental rights, there followed a bitter custody dispute between the foster parents and the child's maternal aunt and uncle. As a result, the foster parents moved the court for an order relieving DCF of custody and granting them custody

3

of the child with the expectation that they would adopt him. The aunt and uncle had similarly moved for custody of the child for adoptive purposes but withdrew their motion before the matter again came before the court.

At the hearing that followed, the sequestration rule was invoked and all nonparties and potential witnesses were excluded from the courtroom. Mother was in the courtroom at the time, and the court excluded her because she was no longer a party to the proceedings, having previously relinquished her parental rights to the child.

Following two days of testimony, the district court found that DCF's attempt to remove the child from the foster parents—the only home the child had ever known—and to place the child with the aunt and uncle constituted an abuse of discretion and that it was in the child's best interest that he be removed from DCF custody and placed in the custody of the foster parents for the purpose of adoption.

A few weeks later the court consented to the child's adoption by the foster parents under K.S.A. 2018 Supp. 38-2270. There followed a bit of procedural confusion that ultimately was resolved.

As noted earlier, the court did not file its order memorializing its findings at the January 16, 2018 termination of parental rights proceeding until July 5, 2018. Once it was filed, Mother timely appealed that order on July 18, 2018.

Three days earlier, on July 15, 2018, Mother had moved for a new trial on the termination of her parental rights. In her motion she objected to the order granting custody to the foster parents and consenting to their adoption of the child. Mother requested a stay of any adoption proceedings regarding the child.

In response, on July 26, 2018, the district court rescinded its July 5, 2018 order, stayed its consent to the child's adoption by the foster parents, and began the process of scheduling a new trial on the State's motion for a finding of unfitness and termination of parental rights.

But later, on October 9, 2018, and in response to a show-cause order from our court, the district court reversed its position, finding that its July 26, 2018 order was improvidently granted and reinstated its July 5, 2018 order after finding that "Mother's voluntary relinquishment under K.S.A. 38-2268 was a proper, legally authorized adjudication of Mother's parental rights." In light of that reinstatement of the July 5, 2018 order, our court retained jurisdiction over Mother's appeal.

*The Validity of Mother's Relinquishment*

Mother's first argument is that her purported voluntary relinquishment of parental rights was invalid, so the district court had no authority to remove her child from DCF custody and place him with the foster parents for the purpose of adoption.

The relinquishment of parental rights is ""a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other."" *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 914, 189 P.3d 1157 (2008) (quoting *State ex rel. Secretary of SRS v. Clear*, 248 Kan. 109, 115, 804 P.2d 961 [1991]). To constitute a valid relinquishment of parental rights, the relinquishment must be knowingly, freely, and voluntarily made. *In re A.W.*, 241 Kan. 810, 815-16, 740 P.2d 82 (1987). When a district court "determine[s] that the proposed relinquishment is voluntary and that the parent has been fully advised of all rights and consequences, [the district court] has the power to approve the relinquishment." 241 Kan. at 816.

5

Here, Mother argues that her relinquishment is invalid for two reasons. First, she argues that DCF never accepted her relinquishment in writing and therefore the relinquishment was never completed. Second, she argues that her relinquishment was with the expectation that DCF would control the ultimate placement of her son, so when the district court removed the child from DCF custody and placed him with his foster parents with the ultimate purpose of them adopting him, Mother's relinquishment became unknowingly made.

*The Adequacy of the Relinquishment Document*

Mother first claims that her voluntary relinquishment was not valid because it did not comply with K.S.A. 2018 Supp. 38-2268, which she reads as requiring DCF to accept the relinquishment in writing for the relinquishment to be effective.

The interpretation of a statute is a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). Our task is to determine the intent of the Legislature in enacting this statute if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). In doing so, we first analyze the statutory language employed, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, we do not speculate about the legislative intent behind the statute's clear language and refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409.

K.S.A. 2018 Supp. 38-2268(b)(1)-(3) provides:

> "(1) Any parent or parents may relinquish a child to the secretary, *and if the secretary accepts the relinquishment in writing*, the secretary shall stand in loco parentis

to the child and shall have and possess over the child all rights of a parent, including the power to place the child for adoption and consent thereto.

"(2) All relinquishments to the secretary shall be in writing, in substantial conformity with the form for relinquishment contained in the appendix of forms following K.S.A. 59-2143, and amendments thereto, and shall be executed by either parent of the child.

"(3) The relinquishment shall be in writing and shall be acknowledge before a judge of a court of record or before an officer authorized by law to take acknowledgements. If the relinquishment is acknowledged before a judge of a court of record, it shall be the duty of the court to advise the relinquishing parent of the consequences of the relinquishment." (Emphasis added.)

Under this plain and unambiguous statutory language, an effective relinquishment of Mother's parental rights to the child is not predicated on a written acceptance by the secretary of DCF. Acceptance by the secretary is the predicate for the secretary standing in loco parentis to the child, but that is not the issue. Notwithstanding the secretary's failure to execute the acceptance of Mother's relinquishment, DCF became the custodian of the child. The evidentiary record establishes that even though the secretary did not sign the relinquishment form, the secretary in fact accepted Mother's relinquishment. See *Clear*, 248 Kan. at 112. Mother is not challenging the secretary's role as custodian. In fact, she wanted DCF to be in control because DCF ultimately wanted to move the child from foster care, where he had lived throughout these proceedings, and place him with his maternal aunt and uncle. Mother argues in her appellate brief that she "*wanted* the child placed with relatives, aunt and uncle. She relied upon the agency's plan to make this placement." (Emphasis added.)

The secretary's failure to sign Mother's voluntary relinquishment form does not vitiate Mother's relinquishment of her rights to her child. Here, the issue is whether the district court can rely on the voluntary relinquishment signed by Mother. If the district court determines that the relinquishment is knowingly and voluntarily made, then it has

7

the inherent authority to approve and accept the relinquishment. See *In re A.W.*, 241 Kan. at 816-17 ("[W]here all the rights of the natural mother were fully protected by the trial court and all of the requirements of the statutes for the protection of the mother were fully met, the court had the inherent power to accept the relinquishment.").

Even if we were to accept Mother's strained reading of the statute, Kansas courts have never required strict compliance with the statutory provisions when doing so would defeat the purpose of the CINC code, which is to serve the best interests of the child. See 241 Kan. at 816-17; see also K.S.A. 2018 Supp. 38-2201(b)(1) ("The [CINC] code shall be liberally construed to carry out the policies of the state which are to: (1) Consider the safety and welfare of a child to be paramount in all proceedings under the code."). We find no contention in Mother's appellate brief that termination of her parental rights was not in the best interests of the child. Her quarrel is simply with the placement of the child with the foster parents for the purpose of adoption.

It is undisputed that Mother received all of the procedural safeguards that are built into the statutory requirements surrounding the relinquishment of her parental rights. Before Mother executed the relinquishment form, her attorney fully explained the permanent consequences of her decision to relinquish her parental rights, and Mother acknowledged her relinquishment in the presence of a notary public. We conclude that the statutory requirements protecting Mother were satisfied, the rights of Mother were fully protected, and the district court did not err when it exercised its inherent power to approve and accept Mother's relinquishment of her parental rights.

*Mother's Relinquishment was Knowingly Made*

Next, Mother argues that her relinquishment was not valid because it was not knowingly made. This presents a mixed question of law and fact, which calls for us to review the district court's factual findings for substantial competent supporting evidence

and to review its legal conclusions de novo. *In re C.P.*, No. 109,359, 2014 WL 349616, at *3 (Kan. App. 2014) (unpublished opinion).

A parent knowingly relinquishes his or her parental rights when he or she has been fully advised of his or her rights and the consequences of his or her actions. *In re A.W.*, 241 Kan. at 816.

As noted earlier, Mother wanted the child placed with his aunt and uncle. She argues that she relied on DCF's plan to make such a placement when she agreed to relinquish her parental rights. But, she argues, her relinquishment was rendered unknowingly made and invalid when the district court removed the child from DCF custody and placed him, for adoptive purposes, with the foster parents.

The requirements of a knowingly made relinquishment of parental rights does not include a requirement that the relinquishing parent be fully informed of what will be the ultimate disposition of the case, i.e., the specific ultimate placement of the child thereafter. The rights that Mother gave up included the right to consent thereafter to an adoptive placement. See K.S.A. 2018 Supp. 38-2268(b)(1), (4). Likewise, she gave up the right to be notified of later adoption proceedings or, indeed, having any say whatsoever in the placement or adoption of the child. See K.S.A. 2018 Supp. 38-2268(b)(1), (4).

Once the district court determined that Mother's relinquishment was voluntary and that she had been fully advised of the rights she was abandoning and the consequences of that act, the district court was empowered to approve the relinquishment. Here, there is substantial evidence in the record that Mother's relinquishment was knowingly made. The relinquishment form itself made clear that "by signing [this form] you are permanently giving up all custody and other parental rights to the child named herein." Those rights are detailed in the form itself, as are the consequences of her relinquishment. Mother signed the form—certifying that she was doing so as a free and voluntary act after

9

reading and understanding its contents—in the presence of a notary public. Mother's attorney also signed the form, certifying that she had fully explained to Mother the consequences of relinquishing her rights to the child. When Mother appeared with counsel at the hearing on January 16, 2018, her counsel advised the court that Mother had "submitted a relinquishment." When the court asked if "her relinquishment stands," counsel stated that it does.

There is substantial competent evidence supporting the district court's finding that Mother knowingly relinquished her parental rights. Finally, the district court's legal conclusion to accept Mother's relinquishment was in conformity with our laws.

*Mother was not Denied Due Process*

Mother's final argument is that the district court denied her due process of law when it found her to be an unfit parent and terminated her parental rights based upon her voluntary relinquishment of those rights.

A parent has a fundamental liberty interest, protected by the Fourteenth Amendment to the United States Constitution, to make decisions regarding the care, custody, and control of his or her child. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008). Before a parent can be deprived of the right to the custody, care, and control of his or her child, the parent is entitled to due process of law. 287 Kan. at 600-01.

Here, Mother contends that she was denied due process of law when the district court found her to be an unfit parent and subsequently terminated her parental rights. But an examination of the district court's final order belies any such finding. The issue of the termination of Mother's parental rights was not resolved by the district court weighing

10

conflicting evidence of her parental fitness. Mother's termination was based solely on her voluntary relinquishment of her parental rights.

The district court used a standard form check-the-box order for findings of unfitness and termination of parental rights. The form contains a box (checked by the court) which indicates that the child's putative father is unfit based on the finding (also checked by the court) that the "parent has abandoned the child, the identity of the parent is unknown and cannot be ascertained, despite diligent searching, and the parent has not come forward to claim the child within three months. K.S.A. 38-2269(d)." The court checked the box that stated that based on the best interests of the child, the parental rights of the putative fathers should be terminated. The court then checked the box indicating that the parental rights of the putative fathers were, in fact, terminated.

The court made no finding of unfitness with respect to Mother. The court checked the box indicating that Mother had relinquished her parental rights. As noted earlier, there was clear and convincing evidence that Mother's relinquishment was knowingly made. The district court simply accepted Mother's voluntary relinquishment of her parental rights. It was based on that relinquishment, not any finding of unfitness, that the district court terminated Mother's parental rights. Moreover, Mother had been provided with all of the procedural safeguards that surround a voluntary relinquishment of parental rights. Mother was not denied due process of law.

Affirmed.