NOT DESIGNATED FOR PUBLICATION

Nos. 120,882
120,883

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of L.K. and H.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Geary District Court; MERITZA SEGARRA, judge. Opinion filed November 1, 2019.
Affirmed.

*Bobby J. Hiebert Jr.*, of Law Office of Bobby Hiebert Jr., LLC, of Salina, for appellant natural
mother.

*Michelle L. Brown*, assistant county attorney, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: Mother voluntarily relinquished her parental rights to her children,
thus terminating her parental rights. Mother later moved to withdraw her relinquishment.
She now appeals the district court's denial of her motion to withdraw her relinquishment
of L.K. and H.B. Finding no error, we affirm.

*Factual and Procedural Background*

The State initiated a child in need of care case concerning L.K. and H.B. Mother
stipulated and the district court adjudicated that both L.K. and H.B. were children in need
of care and at a later hearing determined reintegration was no longer viable.

1

Mother later signed a written relinquishment of her parental rights to both children. Mother appeared at the hearing with her attorney, Aarika Wellnitz, to confirm her relinquishment. Wellnitz told the district court that relinquishment was Mother's idea and that Mother had been seriously contemplating it for a few weeks. Mother, who was pregnant, told the court that relinquishment was in the best interests of her children. She believed this would give her a chance to raise the baby she was expecting.

The district court then asked Mother questions about the rights she was giving up by her relinquishment. When the court asked if she was satisfied with the advice of Wellnitz, Mother responded:

> "Like—she told me—she was really straight honest so far with me. I mean, there was things I didn't want to hear, like, every worst mother's fears, but overall, I came to my conclusions and my senses to do what's best for my children, and to move on, and move forward with my life."

Mother said that she understood that the consequences of the relinquishments were permanent. When the district court asked if anyone had threatened, coerced, or "done anything to make you sign these relinquishments" against her will, Mother responded, "no." She affirmed that she was relinquishing her children freely and voluntarily. She also said she was doing this so she would not "have a record." After announcing its findings, the district court accepted Mother's relinquishments of her parental rights to L.K. and H.B.

Eight months later, Mother moved the court to allow her to withdraw her relinquishments. Mother claimed that her relinquishments had been involuntary because, "due to the strong assertions of the unborn child being taken into State custody[, she] felt compelled to relinquish her parental rights."

The district court held an evidentiary hearing at which multiple witnesses testified. Mother's boyfriend, the father to her third child, stated that Mother's decision to relinquish her children was based on Wellnitz' advice that L.K. and H.B. would probably be taken from her.

Mother testified that she had met with Wellnitz several times and had told Wellnitz that she wanted to fight to keep her children. When Mother asked Wellnitz if the case could be transferred to New York, where Mother intended to move, Wellnitz said she did not think so. At the next meeting, Wellnitz told Mother that, because of the current cases, her unborn child would probably be taken soon after birth into the Department for Children and Family's (DCF) custody as well. Consequently, Mother decided to relinquish her parental rights to L.K. and H.B. because she was terrified at the thought of losing her unborn child. Mother further testified that at the relinquishment hearing, Wellnitz had whispered to her the answers to the questions the district court asked and she felt forced to sign the documents.

Wellnitz' testimony varied from Mother's testimony. Mother first mentioned relinquishment to Wellnitz after Mother talked to her old foster mother. Because Mother was planning to leave Kansas, she was adamant about relinquishing her parental rights to L.K. and H.B. Wellnitz never forced Mother into the relinquishment and did not tell her what to say during the relinquishment hearing. When Wellnitz was first appointed to this case, the district court had already decided that reintegration was no longer an option for one of the children. Wellnitz was straightforward with Mother, telling her that unless she made significant improvements in her life she would probably lose both children.

Jackie Miller, the case manager at the time of the relinquishments, also testified. Miller was initially surprised at the relinquishments, but Mother later told Miller that she had signed them because she thought it was best for her children, she was pregnant, and she had a bus ticket to New York. Miller, who was at the relinquishment hearing, never

3

saw Wellnitz whisper anything to Mother. And Mother did not seem emotional or upset at that hearing.

After reviewing the evidence, the district court found that Mother was not forced or coerced into relinquishing her parental rights to L.K. and H.B and that her relinquishment was freely and voluntarily made. The district court also found that the advice Wellnitz gave Mother was correct and sound. Thus, the district court denied Mother's request to withdraw her relinquishment of L.K. and H.B.

Mother timely appeals.

*Did the District Court Err by Denying Mother's Request to Withdraw Her Relinquishment?*

On appeal, Mother does not dispute that the district court substantially complied with the statutory requirements for relinquishment or that it provided her with adequate procedural safeguards. See K.S.A. 2018 Supp. 38-2268. The sole issue on appeal is whether the district court correctly found no threat or coercion.

The voluntariness of relinquishment of parental rights is a mixed question of law and fact. We review a district court's findings of fact for substantial competent evidence, which is such legal and relevant evidence as a reasonable person might accept as sufficient to support the legal conclusions. But we have unlimited review of the district court's legal conclusions. *In re D.C.*, 32 Kan. App. 2d 962, 967, 92 P.3d 1138 (2004).

The relinquishment of parental rights is ""a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other."' [Citations omitted.]" *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 914, 189 P.3d 1157 (2008). Under Kansas statute the relinquishment of parental rights must be

4

knowing, free, and voluntary. *In re A.W.*, 241 Kan. 810, 816, 740 P.2d 82 (1987). The district court has the power to approve a parent's relinquishment once it determines that the relinquishment is voluntary and the district court has fully advised the parent of all rights and consequences. *In re A.W.*, 241 Kan. at 815-16. Whether the parent's relinquishment was freely or voluntarily given depends on the facts and circumstances of each case. And "'these issues are to be determined by the trier of fact who has the best opportunity to weigh the evidence and test the credibility of witnesses. [Citation omitted.]'" *In re Adoption of X.J.A.*, 284 Kan. 853, 876, 166 P.3d 396 (2007).

Mother argues that her fear of losing her unborn child should have been the district court's paramount consideration when deciding whether she freely or voluntarily relinquished her children. Moreover, Mother construes this potential loss as a "threat." Mother also argues that because she provided substantial competent evidence supporting her fear of losing her unborn child, the district court should have set aside her relinquishment.

Yet, Mother misunderstands our standard of review. When determining whether to affirm or reverse the district court under the substantial competent evidence standard of review, we review only whether a reasonable person could find that the legal and relevant evidence supports the district court's legal conclusion, not a litigant's contentions. See *In re D.C.*, 32 Kan. App. 2d at 967.

Mother argues that the district court should have given her testimony more weight. But this court cannot reweigh the evidence to determine whether Mother freely and voluntarily relinquished her parental rights. See *In re Adoption of X.J.A.*, 284 Kan. at 876. "This court normally gives great deference to the factual findings of the district court. The appellate court does not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. [Citations omitted.]" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Mother asserts that the district court overlooked the "real

5

pressure and fear related to the loss of her unborn child." But it is the district court, and not this court, who must weigh the evidence presented by the parties and determine credibility.

But even if the district court had granted more weight to Mother's testimony, it was correct in its legal conclusion that she was not threatened or coerced into relinquishing her parental rights. The distress surrounding the prospect of having one's parental rights terminated is not enough to show that a relinquishment was involuntary. See *In re J.D.P.*, No. 117,638, 2018 WL 4373906, at *7 (Kan. App. 2018) (unpublished opinion). Our Supreme Court has found "no merit in the contention that judicial proceedings, per se, subject a parent to duress which might invalidate a voluntary relinquishment." *In re A.W.*, 241 Kan. at 816. In the analogous context of a plea withdrawl, our Supreme Court has not characterized the influence of circumstances surrounding a waiver of rights as amounting to legal threat or coercion. See *Wippel v. State*, 203 Kan. 207, 209, 453 P.2d 43 (1969) (stating defendant's fears of losing his children to foster care were "personal considerations" that did "not constitute the coercion required to vitiate an otherwise voluntary plea"); *Williams v. State*, 197 Kan. 708, 711, 412 P.2d 194 (1966) ("Every man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty.").

Mother's relinquishment was based on personal considerations. No one, including Wellnitz, threatened or coerced Mother into relinquishing her parental rights. Indeed, the only "threat" came from a potential future legal proceeding—that DCF would take custody of Mother's third child when it was born. However, such proceedings do not constitute legal duress. Thus, the district court was correct in finding that Mother's fear of losing her unborn child in a potential future child in need of care case would not support a claim of coercion, duress, or threat.

6

We find substantial competent evidence supporting the district court's finding that Mother freely and voluntarily relinquished her parental rights.

Affirmed.